[Crim. No. 10252. First Dist., Div. Two. Feb. 22, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD SAMUEL COHN, Defendant and Appellant.

## COUNSEL

Cahn & Iversen and Marvin S. Cahn for Defendant and Appellant.

*Evelle J. Younger*, Attorney General, *Edward A. Hinz, Jr.*, Chief Assistant Attorney General, *William E. James*, Assistant Attorney General, *Robert R. Granucci* and *Thomas A. Brady*, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—On this appeal by defendant, Edward S. Cohn, from a judgment finding him guilty of a felony violation of possession of marijuana (Health & Saf. Code, § 11530), the contentions are that: 1) the affidavit in support of the search warrant was insufficient; 2) there was no probable cause for his arrest; 3) evidence obtained by the officers after the arrest was properly excluded; and 4) the evidence was insufficient to support the judgment.

After defendant waived his right to a jury trial, the matter was submitted to the court on the transcript of the combined preliminary hearing, Penal Code section 1538.5 hearing, and hearing on defendant's traverse of the grounds for issuance of the search warrant (Pen. Code, § 1539). The facts disclosed therein are as follows: Officer Richard E. Gorman of the Berkeley Police Special Investigations Bureau testified that about 10:30 a.m. on May 12, 1970, Officer Clifton relayed a call, through the police department dispatcher, from a woman who stated that earlier that morning, she had observed several men in a garage at 747 Hilldale Avenue engaged in suspicious activities, namely, the packaging of green vegetable matter in blue wrappers. Officer Gorman and his partner, in plainclothes in an unmarked police car, proceeded to the address, a single-story house with a garage underneath. The front door was closed and the drapes drawn; the garage door was partially open but there was no activity visible to the officers. They then parked the car and Officer Gorman walked toward the house. When he was about 30 feet from the front door, a man, subsequently identified as defendant, came out the door and onto the porch. He looked at the officer, had a change of expression, and then quickly re-entered the house.

Officer Gorman returned to the police car and proceeded to return to police headquarters. En route, the dispatcher radioed that he had received another call from the same woman, who indicated that she had seen the officers pull up, and described their car. She had also observed Officer Gorman walk in front of the house and saw defendant come onto the porch. She identified defendant as one of the people she had seen earlier in the garage and also stated that she had a "matchbox" she had taken from the garage. The officers told the dispatcher to obtain the woman's telephone number. The dispatcher did so and Officer Gorman called the number, after ascertaining that her name was Mrs. X[1] and that she lived at a given

---

[1] While her name and address were revealed to the officers, we have referred to her as Mrs. X.

address directly across the street form 747 Hilldale. In this conversation, Mrs. X reiterated that she had previously observed the officers in the area and accurately described Officer Gorman's clothing. She also stated that after Officer Gorman left, the curtains in the house were opened and that the walls of the garage were lined with "matchboxes." She agreed to meet the officers in a driveway on Poplar, just west of Hilldale.

As the officers approached the meeting place, they saw a man and woman standing in the driveway. The woman motioned for the officers to park about half a block away. After the officers did so, the man approached the car and stated he was the husband of the caller and that he had a "matchbox" that his wife had obtained from the garage at 747 Hilldale.[2] Officer Gorman received from the man an 8- by 2-inch package wrapped in faded blue paper that was approximately the size of a kilo of marijuana. Gorman, who had made over 100 previous arrests involving marijuana, opened the package and observed what he believed to be marijuana. The man stated that he did not wish to give his name to the officers as he feared reprisals. During the conversations, the woman stood by and said nothing. The officers surmised that the woman had entered the garage and obtained the package earlier that morning, probably between 10:30 and 11, although she was not asked to establish the exact time.

The officers then re-entered the car with the package and proceeded to the district attorney's office to obtain a search warrant. En route, they received another call from the dispatcher[3] who said that the same woman had called again and reported the presence of a blue car that had been at 747 Hilldale previously; there was activity between the trunk of the car and the house, with people entering and leaving the house quickly.

The officers believed that an emergency existed, radioed for cover, and returned to 747 Hilldale and arrested the four people, who were on the front porch as the officers pulled up, for possession of marijuana. Defendant was one of the four arrested about 11:30 a.m. or noon. Officer Gorman and the others then entered the house through the open front door to look for more suspects. After walking through the house, the officers

---

[2]Although the defense objected to this testimony at the hearing, the basis of the objection was never specified.

[3]The parties stipulated that the testimony of the dispatcher and the other officer who had received the initial telephone call was not necessary to establish the fact that the police had received a complaint.

observed a kilo of marijuana on a counter in the kitchen.[4] After ascertaining that no one else was in the house, Officer Gorman obtained defendant's name and then left to obtain a search warrant.

When the officers returned to the house with the search warrant, they found in a small room in the garage 231 blue-wrapped kilo packages (approximately 462 pounds) of what was stipulated to be marijuana. Inside the house, the officers found two other kilos of marijuana, several hash pipes, several scales, a dialagram, cocaine, paraphernalia, and miscellaneous papers containing an identification of defendant and two of the other persons arrested. A hash pipe and $12,157 were taken from the arrestees. Papers and checks bearing defendant's name were found inside a suitcase; two of these papers gave defendant's home address as being in New Jersey.

On cross-examination, Officer Gorman testified that neither Mrs. X nor her husband were informants paid by or known to the Berkeley Police Department. Prior to May 12, he had no other information concerning any of the people arrested and had never met or seen any of them. He had the impression that the package given to him by Mr. X had been obtained shortly before his telephone conversation with her, although it was never really made clear exactly when she had obtained it other than the fact that it had been obtained that day.[5]

Defendant's major contention on appeal is that all of the evidence obtained when the officers executed the search warrant must be excluded as the affidavit supporting the warrant was insufficient. The allegations of Officer Gorman's affidavit summarizing most of the facts indicated above are set forth in the footnote below.[6]

---

[4]The trial court concluded that the entry into the house was improper and that the discovery of the marijuana in the house could not be used as a basis for obtaining a search warrant.

[5]The officers' testimony and the affidavit imply that the package was obtained sometime between her first telephone call to the police station at 10:30 a.m. and the time when Officer Gorman telephoned her after talking to the dispatcher.

[6]"That the following facts establish the existence of grounds for the issuance of a starch warrant and, further, establish probable cause for believing that said grounds exist: On May 12, 1970 affiant spoke with a confidential informant whose identity cannot be disclosed without fear for said informant's personal safety; said informant is a resident of the City of Berkeley and has been so for several years. Said informant told affiant that on May 12, 1970 said informant was walking past the premises at 747 Hilldale and observed several males in a garage fronting on Hilldale and attached to the premises, inside the garage, packaging green vegetable matter into blue packages.

"Approximately 1½ hours later said confidential informant told affiant that said informant had obtained one of the packaged green vegetable matter from the garage; there were numerous more stacks of the said packages in the garage. Affiant obtained

 The test for the constitutional sufficiency of an affidavit for a search warrant was set forth by the United States Supreme Court in *Aguilar* v. *Texas,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509], as follows: "Although an affidavit may be based upon hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was . . . 'reliable.' " From this information, the magistrate must independently determine whether probable cause exists to issue a search warrant. A mere assertion that the informant is reliable is not enough (*United States* v. *Harris,* 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075]; *Spinelli* v. *United States,* 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]).

Thus, the United States Supreme Court, as well as the courts of this state, have held that an affidavit based on an informant's hearsay statement is legally sufficient if two requirements are met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary, and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable (*People* v. *Superior Court (Johnson)* 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183]; *People* v. *Hamilton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]). As stated by the Supreme Court of the United States in *United States* v. *Ventresca,* 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]: "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

---

from said confidential informant and another confidential informant, a package approximately 4" x 2" x 12" containing green vegetable matter, which affiant identifies from his experience as marijuana, which is wrapped with a heavy blue paper.

"Affiant believes from the confidential informant's observations and the blue package obtained, that there is more marijuana in the house."

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar* v. *Texas, supra.* Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

Defendant here contends that neither of the two "prongs" of the *Aguilar* test was met. As to the first, however, there is little question since the affidavit clearly recites Mrs. X's statement based on her personal observation of the activities in the garage at 747 Hilldale.

Recently, in *Krauss* v. *Superior Court,* 5 Cal.3d 418 [96 Cal.Rptr. 455, 487 P.2d 1023], our Supreme Court was faced with a situation somewhat less compelling than the instant case. In *Krauss,* a motel maid, while cleaning the defendant's room, saw what appeared to be an empty cigarette package on a nightstand. She opened it to see if it was in fact empty and should be discarded and discovered a plastic bag containing a green, leafy substance. As she had previously taken a drug demonstration class given by the police department at which she saw and smelled marijuana, she believed she had discovered contraband. She replaced the bag in the cigarette pack, replaced it on the nightstand and told the woman motel manager who telephoned the police. The police entered the room with the permission of the manager in the presence of the two women, inspected the cigarette pack and the plastic bag and then obtained a search warrant. In upholding the sufficiency of the affidavit to support the warrant, our Supreme Court noted that it was sufficiently established in the *Krauss* case that the maid suspected from personal knowledge, and that her information was reliable. "As a citizen who observed the commission of a crime, she was more than a mere informer. '[T]ests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police.' [Citations.] Although her status as a citizen informer did not eliminate the necessity of establishing that her information was reliable, the circumstances of her discovery, the details

of her information, and her prior experience in examining marijuana justified the magistrate in concluding that she was reliable." (Pp. 421-422.)

The officer's affidavit indicates that here, as in the case of the maid in *Krauss,* Mrs. X, was an ordinary resident of Berkeley and not a mere police informant. She observed suspicious circumstances in a garage as she was walking past the premises and reported them to the police. She had insufficient expertise to identify the vegetable contents of the matchbox she subsequently obtained from the garage. However, with another informant (her husband), she turned the box over to the officer who was presumably better qualified to make an identification of the substance as marijuana than was the maid in *Krauss.* The officer's corroboration of Mrs. X's suspicions was set forth in the affidavit.

Defendant complains that the package was the fruit of the poisonous tree because of the illegality of Mrs. X's entry into the garage and theft of the particular package.[7] ■ The Fourth Amendment prohibition against unreasonable searches and seizures does not apply to private individuals unless they are participating in joint activity or in cooperation with law enforcement officers (*People* v. *Payne,* 1 Cal.App.3d 361, 365 [81 Cal.Rptr. 635]; *Burdeau* v. *McDowell,* 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574]).[8] Thus, the exclusionary rule adopted by the courts for the purpose of insuring that officers confine themselves to lawful searches has no application to this case.[9] Here, the package was obtained before the officers were contacted and without their knowledge or cooperation. Officer Gorman's conduct in opening the matchbox, although it was state action, was clearly based on probable cause to believe that the box contained contraband and, therefore, was proper (cf. *People* v. *McKinnon,* 7 Cal.3d 899, 915 [103 Cal.Rptr. 897, 500 P.2d 1097]). Thus, as in *People* v. *McKinnon, supra,* Mrs. X's observations were then augmented by the expertise of the officer as to the contraband contents of the package.

[7]No other inference can be drawn from the record.

[8]The case cited by defendant in support of this argument, *People* v. *Superior Court* (*Flynn*) 275 Cal.App.2d 489 [79 Cal.Rptr. 904], is readily distinguishable as the search there was conducted by a postman, a government agent, whose conduct was governmental action within the meaning of the Fourth Amendment.

[9]The owners and occupants of the premises are limited to the right to initiate whatever civil or criminal actions are indicated as a result of the taking of the matchbox. While citizens have the duty to report unlawful activities to the proper authorities, this opinion should not be construed to condone or encourage any violation of the law, regardless of how highly motivated. On the other hand, we are not here concerned with undisciplined police action, and consequently, there is no sound public policy reason to reward a defendant found guilty of a serious public offense by exonerating him through the exclusion of incriminating evidence.

■ Defendant, citing *People* v. *Legard*, 12 Cal.App.3d 1006 [91 Cal.Rptr. 257][10] and *People* v. *Scoma*, 71 Cal.2d 332, at page 339 [78 Cal.Rptr. 491, 455 P.2d 419], argues that the fact that an informant is found to possess narcotics gives no credence to his assertion that he obtained them from a particular person or place. However, both *Scoma* and *Legard*, unlike the instant case, involved professional rather than citizen informants. While the basic requirements of *Aguilar* apply to citizen informants as well as to professionals, yet, as previously indicated, the tests of reliability applied to the two are not the same (*Krauss* v. *Superior Court, supra*). Furthermore, we think an important fact bearing on Mrs. X's reliability in this case is that in turning over the package to the officers, she and her husband were both subjecting themselves to possible arrest for possession of marijuana and malicious prosecution, as well as *trespass and burglary*. It seems unlikely that ordinary citizens, in absence of a sense of *public duty*, would subject themselves to such criminal prosecutions. Thus, we are provided with a strong indication that their information was credible.[11]

■ Defendant further maintains that the affidavit was based on "stale" information as there is no indication of the exact time when Mrs. X observed the packaging activity in the garage and obtained the package that was subsequently turned over to the officers. While the record is unclear as to the exact time, the only reasonable inference is that it occurred the same day. We note that lapses of nine days[12] (*People* v. *Sheridon*, 2 Cal. App.3d 483, 490-491 [82 Cal.Rptr. 695]), 15 days (*People* v. *Wilson*, 268 Cal.App.2d 581 [74 Cal.Rptr. 131]), 18 days (*People* v. *Scott*, 259 Cal. App.2d 268, 277-278 [66 Cal.Rptr. 257]), have been held not stale in California. In *United States* v. *Harris, supra*, an allegation that the "in-

---

[10]The instant case and *Krauss* are rare instances of search warrants issued on affidavits containing information from private citizens rather than professional stool pigeons or participants.

In *Legard*, this court (division three) held that the citizen informant rules could not be applied to an informant who had previously furnished information to the police—a fact not revealed in the affidavit.

[11]Under these circumstances, even professional informers may become more credible (cf. *United States* v. *Harris, supra*, 403 U.S. 573, where the court said at p. 583 [29 L.Ed.2d 723, at p. 734]: "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.").

[12]An annotation on the subject, 100 A.L.R.2d 525, at page 527, notes that, in general, a lapse of four days will not invalidate a search warrant while a lapse of more than seven weeks always will.

formant" had personal information of the purchase of the contraband within the past two weeks and knowledge of another person who had purchased it within two days, was held sufficient. At best, the absence of a specific time was a factual inadequacy that, under the circumstances here presented, was of peripheral relevancy (cf. *State* v. *Johnson*, 102 R.I. 344 [230 A.2d 831]). ■ We conclude that the affidavit was sufficient to meet both prongs of the *Aguilar* test and, therefore, sufficient to establish probable cause for its issuance.

Defendant next contends that his arrest without a warrant was made without probable cause. ■ While the test is basically the same as that applied above by a magistrate in determining the sufficiency of information in an affidavit supporting a search warrant (*People* v. *Madden*, 2 Cal.3d 1017, 1023 [88 Cal.Rptr. 171, 471 P.2d 971]), our Supreme Court has noted that a greater showing of probable cause is required to justify a warrantless arrest than to justify the issuance of a warrant.

It is well settled in this state that where the informer is a citizen who is merely a witness to or a victim of the crime, an officer may make an arrest based on the information supplied by the citizen. As indicated above, the situation in which a private citizen informs the police of criminal activities is different from information given them by a paid or professional informer or an informer who is a participant in the criminal activity. A citizen who observes criminal activity is more than a mere informer and tests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police (*People* v. *Guidry*, 262 Cal.App.2d 495, 498 [68 Cal.Rptr. 794]). ■ Since an objective private citizen is acting openly for the purpose of aiding law enforcement, the police may justifiably act on the report of the citizen without testing his or her reliability (*People* v. *Tharp*, 272 Cal.App.2d 268 [78 Cal.Rptr. 412]).

In the instant case, Mrs. X, in her first telephone conversation with the officers, indicated that she had observed several men engaged in suspicious packaging activity in the garage at 747 Hilldale. In her second series of telephone conversations with the officers, she indicated that she had obtained from the garage a "matchbox" wrapped in blue paper like all of the other "matchboxes" that were in the garage in large quantity. Mrs. X had related other information to the officers that indicated that they could reasonably believe her report. She told them she had observed the officers drive up in their unmarked car and watched one of them walk by the house and garage at 747 Hilldale. From the officers' independent check of her telephone number and address, they were able also to ascertain that

she lived directly across the street from 747 Hilldale and, therefore, was in a position to observe that address.[13]

Subsequently, her husband gave the package that she had obtained to the officer. The officer opened the package and ascertained that it was marijuana. At this time, it was clear that a public offense had been committed. The question is whether the officer at this point was reasonable in believing Mrs. X's statement that an offense had been committed and that defendant, whom she had seen packaging in the garage earlier and come out on the porch that morning when the officer walked by, had committed the offense. We think so. Although the officers, in a commendable exercise of caution and concern for citizens' rights, had decided to obtain a search warrant before the arrest, they were deterred by Mrs. X's third telephone call indicating that there was a great deal of activity between the house and a blue vehicle that had previously been parked there. This report indicated further verification of the unlawful activity previously established and also indicated an emergency situation. It was only after this third telephone call that the officers returned to 747 Hilldale and arrested the four persons on the porch.

■ Defendant argues that since the package was turned over to the officers by her husband and Mrs. X remained silent, the ensuing conversation involved hearsay upon hearsay.[14] However, no hearsay objection was made when this evidence was admitted at the combined hearing and defendant voluntarily submitted the cause for decision on the transcript.

Defendant next contends that by analogy to the rule established by this court in *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689], the prosecution was required to call Mrs. X or her husband in order to establish the existence of probable cause for the arrest. Here, however, there was not the danger to which the Harvey rule is directed, namely, that the source of the information be only the conclusions of an officer who does not become a witness. Mrs. X's identity was known and confirmed by the officers who verified her address and telephone number. Defendant waived any other proceedings in which he could have cross-examined her and stipulated that it was not necessary for the prosecution to call Officer Clifton or the dispatcher. ■ Furthermore, no specific *Harvey* objection was

---

[13]This additional information was not set forth in the warrant, but for purpose of the arrest, provides the greater showing of probable cause required (*People* v. *Madden, supra.*)

[14]An affidavit containing hearsay on hearsay can withstand attack where, as here, the supporting circumstances related therein are sufficient in themselves to establish probable cause (*United States* v. *Roth,* 391 F.2d 507, 511).

raised and must, therefore, be deemed waived (*People* v. *Moore,* 13 Cal. App.3d 424, 432-435 [91 Cal.Rptr. 538]). We conclude that on the basis of the facts known to the officers at the time they were required to react, there was sufficient probable cause for the arrest of defendant and the others on the porch.

■ We turn next to the People's contention that the trial court erroneously excluded the kilo of marijuana observed by the officers in the kitchen when they entered the house after the arrest. The People argue that it was reasonable for the police officers to enter the house through the open door to see if there were additional people hidden there, as Mrs. X had reported seeing "several" men packaging matchboxes in the garage. "Several" means "more than two, but not very many" (Webster's New Internat. Dict. (1970 ed.)), and the officers had already arrested four men on the front porch, found more contraband but no weapons, and heard no noises indicating the presence of additional persons. Under these circumstances, the prosecution's argument is rather thin and we conclude that the trial court properly excluded this evidence (cf. *Vale* v. *Louisiana,* 399 U.S. 30 [26 L.Ed.2d 409, 90 S.Ct. 1969]).

Finally, defendant argues that the evidence was insufficient to support the judgment of conviction for possession. ■ Unlawful possession of marijuana may be established by proof that a defendant: 1) had exercised dominion and control; 2) had knowledge of its presence; and 3) had knowledge of its narcotic character (*People* v. *Hutchinson,* 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132]). Each of these elements may be established by circumstantial evidence and any reasonable inference drawn therefrom. When the sufficiency of the evidence is challenged, an appellate court must affirm a conviction when the record contains substantial evidence of all the elements of the crime (*People* v. *Groom,* 60 Cal.2d 694 [36 Cal.Rptr. 327, 388 P.2d 359]). ■ Exclusive possession is not a requisite element of the offense (*People* v. *Tharp, supra*) and the law recognizes the doctrine of joint or constructive possession (*People* v. *Francis,* 71 Cal.2d 66 [75 Cal.Rptr. 199, 450 P.2d 591]). In the instant case, the officer observed defendant leave and then re-enter the residence on his first visit to the house. Subsequently, the officer was informed that Mrs. X had witnessed the confrontation between defendant and the officer and that defendant was one of the men she had seen earlier in the garage packaging items in blue wrappers. Although this evidence was hearsay, defendant here waived trial and submitted the question of his guilt or innocence on the basis of the transcript of the evidence adduced at the combined hearings. After obtaining the search warrants, the officers found

a large quantity of marijuana in the garage, as well as a suitcase containing papers and checks with defendant's name inside the house. In addition, a large quantity of money was taken from the four arrested persons, although the record does not indicate how much of this amount was taken from defendant. Thus, there was ample circumstantial evidence from which the court could conclude that defendant was in possession of the marijuana found in the garage. The presence of defendant's papers and property inside the house negates any inference that he was merely a casual visitor that day and permits an inference of dominion and control.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.