[Crim. No. 43548. Second Dist., Div. Seven. Oct. 3, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES FRANCIS KERSHAW, Defendant and Respondent.

COUNSEL

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Roderick W. Leonard, Deputy District Attorneys, for Plaintiff and Appellant.

Arthur Lewis for Defendant and Respondent.

## OPINION

JOHNSON, J.—This is an appeal by the People from orders suppressing evidence and dismissing the case against the defendant who was charged with possession of cocaine for sale. The only issue is whether a police officer's affidavit established probable cause for the issuance of a warrant to search defendant's residence. We find an anonymous informant's detailed statement coupled with detailed activities observed at defendant's home and defendant's arrest record were sufficient to support the warrant. We therefore reverse.

### I. FACTS AND PROCEEDINGS BELOW

Glendale police began surveillance of defendant's home after receiving information from an anonymous telephone caller that defendant was selling

cocaine. Most of the surveillance occurred in the evening. (*Ibid.*) The surveillance showed an unusual amount of traffic to and from defendant's home. On one evening, defendant had six separate visitors in just a little over an hour. On another, defendant had eight in about an hour. The visits usually lasted 10 to 20 minutes. In three evenings of surveillance, totalling 16 hours, the police observed 22 individuals entering and leaving defendant's home.

Further investigation by the Glendale police disclosed defendant had been arrested in the previous year for possession of cocaine for sale and there was an outstanding arrest warrant for defendant on that same charge.

The information from the anonymous informer was based on statements allegedly made by a relative of the informer who claimed to be regularly purchasing cocaine from the defendant. The informer supplied police the defendant's name, nickname, the street on which defendant lived, his telephone number, and the type of car he drove. This information was corroborated by the police. The informer also told the police that defendant dealt in kilos of cocaine wrapped in newspapers, carried a .45 caliber pistol and kept the cocaine at his home and at another location. None of this information was corroborated. The informer explained anonymity was important because he/she[1] feared the defendant. Finally, he/she told the police the call was motivated by the informer's concern over the relative's use of cocaine.

The foregoing was placed in an affidavit by a Glendale police officer and presented to a magistrate. The magistrate issued a search warrant for defendant's home and automobile. Upon executing the warrant, police officers found cocaine in both locations. Defendant was arrested and charged with possession of cocaine for sale.

Defendant moved for an order suppressing the evidence seized under the warrant on the ground that the affidavit failed to establish probable cause for the search. The superior court granted the motion.

II. The Information From the Anonymous Informer Was Relevant to the Determination of Probable Cause.

We recognize an allegation by an informer cannot by itself supply probable cause for a warrant unless it meets the requirements of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] as refined in *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct.

---

[1]The affidavit referred to the informer as "he/she" throughout in order to conceal the sex of the person supplying this information to the police.

584].[2]  ■  Under the *Aguilar-Spinelli* test, hearsay information of criminal activity will support a search warrant only if affidavits establish that the informant spoke with personal knowledge and that his information was reliable. (See, e.g., *People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)

## A. *This Informant Did Not Qualify as a "Citizen Informant."*

The officer's affidavit identifies the source of this information about defendant's cocaine trafficking as a citizen informant.  ■  This allegation is potentially significant since citizen informants, in contrast to criminal informants, are assumed to supply reliable information. Thus, they require little if any corroboration. However, despite the officer's characterization, the informant in this case fails to qualify as a "citizen informant."

### 1. *This informant's statement fell short of satisfying the personal knowledge requirement.*

The prototypical citizen informer is a victim reporting a crime that happened to him or a witness who personally observed the crime occur.

In the case at bar, the informant did not claim to possess personal knowledge defendant was selling cocaine. He/she did, however, describe the source of his/her information. This was a relative who allegedly did have personal knowledge obtained through purchasing cocaine from defendant.

There is case law supporting the proposition that an informant, even a citizen informant, need not have personally observed the crime or evidence to be seized if the informant identifies the person who does possess that

---

[2]The People argue that the *Aguilar-Spinelli* standard for probable cause is no longer applicable in light of the less exacting analysis adopted in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317]. But it does not follow that because the United States Supreme Court may have lowered the minimum standard of probable cause for Fourth Amendment purposes, California courts are precluded from maintaining a higher standard for purposes of our state Constitution. (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099].)

Where, as here, the crime predates the enactment of Proposition 8, the provisions of article I, section 13 of our state Constitution afford an independent ground for excluding the evidence seized from the defendant. (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]; *People* v. *Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149].)

Decisions by our Supreme Court indicate that it has adopted the *Aguilar-Spinelli* standard to test compliance with the probable cause requirement of article I, section 13. (*People* v. *Sesslin* (1968) 68 Cal.2d 418, 422-423, fn. 2 [67 Cal.Rptr. 409, 439 P.2d 321]; *Alexander* v. *Superior Court* (1973) 9 Cal.3d 387, 390 [107 Cal.Rptr. 483, 508 P.2d 1131].) It is not the office of this court to declare that standard abandoned. In any event, application of *Illinois* v. *Gates* would not change the outcome of this case. (See fn. 4, *infra*.)

personal knowledge and explains how the informant acquired the other's knowledge. (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 32 [121 Cal.Rptr. 269] [named citizen informant recited observations by her daughter and a named friend]; see also *People* v. *Superior Court* (*Bingham*) (1979) 91 Cal.App.3d 463, 475 [154 Cal.Rptr. 157]; *Caligari* v. *Superior Court* (1979) 98 Cal.App.3d 725, 732 [159 Cal.Rptr. 534].) Those cases are distinguishable, however, because in each one the person holding the personal knowledge was identified by name and could, if necessary, be questioned. Moreover, in each of those cases the informant satisfied the reliability requirement of *Aguilar-Spinelli*. Here, the person alleged to possess the requisite personal knowledge, like the informer, was anonymous. Furthermore, as we will discuss below, the anonymity of the informant made it impossible for the police to verify his/her reliability. Therefore, the officer had no way of judging whether the informer's relative even existed. For these reasons the personal knowledge requirement is not met in this case.

2. *This informant's anonymity meant he/she was not entitled to the presumptive reliability of a citizen informer.*

The courts have distinguished between sources who volunteer information to promote their own special interests and informers who volunteer information out of a sense of civic responsibility. The former class includes informants who are themselves criminals, drug addicts or professional "stool pigeons." The factors motivating these informants include offers of immunity or sentence reduction, money payments, revenge or the hope of eliminating criminal competition. (Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards* (1972) 81 Yale L.J. 703, 712-713.) The latter class consists of ordinary citizens who are the victims of, or witnesses to, a crime. (*People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814 [124 Cal.Rptr. 585] and cases cited therein.) These informers act openly in aid of law enforcement motivated by good citizenship. (*People* v. *Smith* (1976) 17 Cal.3d 845, 850-851 [132 Cal.Rptr. 397, 553 P.2d 557].) Because of their differences in character and motivation, "the requisite showing of reliability in the case of a citizen informant is significantly less than that demanded of a police informer." (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].) Information coming from private citizens who are witnesses to or victims of a criminal act is presumed reliable. (*Ibid.*)

In order for the presumption of reliability to apply, however, the affidavit must affirmatively set forth the circumstances from which the existence of citizen-informer status can reasonably be inferred by a neutral and detached magistrate. (*People* v. *Smith, supra,* 17 Cal.3d at p. 852.) Nothing in the

record here suggests the police were ever aware of the identity or background of the informant. Therefore, the presumption of reliability that attaches to information from ordinary citizen informants is not applicable here. That rule "presupposes that the police be aware of the identity of the person providing the information and his status as a true citizen informant. [Citation omitted.] . . . In short, probable cause will not be provided by conclusionary information or anonymous informants . . . ." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 269.)

This is not a case like *People* v. *Cohn* (1973) 30 Cal.App.3d 738 [106 Cal.Rptr. 579], in which the identity of the informant was known to the police but omitted from the affidavit for the informer's protection.[3] There are significant differences relevant to credibility between an informer who is known to the police but unidentified, what might be termed the confidential citizen informer, and one who is unknown to the police, the anonymous informer.

In the case of confidential citizen informers, the mere fact that they make their identity known to the police is, itself, some indication of their honesty. (See *United States* v. *Harris* (1971) 403 U.S. 573, 599 [29 L.Ed.2d 723, 742, 91 S.Ct. 2075] [Harlan, J. dis.].) A further indication of reliability is that by identifying themselves to the police they expose themselves to potential liability for malicious prosecution or false reporting of a crime if their information proves to be false. (*People* v. *Mardian, supra,* 47 Cal.App.3d at p. 32.) Furthermore, by identifying themselves, these citizen informers afford the police the opportunity to check on matters affecting their credibility such as the existence of a criminal record and whether they had previously supplied information to the police.

In contrast, information from anonymous sources is inherently unreliable. Neither the police nor the magistrate knows the motives of the unknown informant. Here the informer may have been motivated by concern for the welfare of a relative as he/she claimed to be (cf. *People* v. *Mardian, supra,* 47 Cal.App.3d at p. 33) or may have been perpetrating a hoax on the police

---

[3]In *Cohn,* the affidavit established that the police knew the name and address of their informant, "whose identity cannot be disclosed without fear for said informant's personal safety." (30 Cal.App.3d at p. 743, fn. 6.) The affidavit contained sufficient information from which the magistrate could reasonably conclude that "Mrs. X" was a citizen informer.

"The officer's affidavit indicates that . . . Mrs. X, was an ordinary resident of Berkeley and not a mere police informant. She observed suspicious circumstances in a garage as she was walking past the premises and reported them to the police. She had insufficient expertise to identify the vegetable contents of the matchbox she subsequently obtained from the garage. However, with another informant (her husband), she turned the box over to the officer . . . . The officer's corroboration of Mrs. X's suspicions was set forth in the affidavit." (*Id.* at p. 746.)

or seeking revenge on a neighbor (cf. *Norton* v. *United States* (4th Cir. 1978) 581 F.2d 390, 391-392). In addition, the police and the magistrate cannot possibly know how the informant obtained the information (*People* v. *Reagan* (1982) 128 Cal.App.3d 92, 98-99 [180 Cal.Rptr. 85]). Nor can they obtain additional information to check out the informer's credibility. Without knowing the identity of the source, the police cannot even determine whether he or she is a criminal, a drug addict, a "stoolie" or an otherwise inherently unreliable individual. Moreover, where the anonymous information comes over the telephone, as it did here, the police have no opportunity to observe the informer's demeanor while relating the information. Thus, they are deprived of an important facet to the determination of a witness' credibility. (See, generally, Comment, *Anonymous Tips, Corroboration, and Probable Cause*, 20 Am. Crim. L.Rev. (1982) 99, 105-107.) We note that decisions of California courts and the United States Supreme Court appear to be unanimous in rejecting anonymous tips, standing alone, as the basis for a search warrant. (See, e.g., *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 871 [34 Cal.Rptr. 251]; *Adams* v. *Williams* (1972) 407 U.S. 143, 146-147 [32 L.Ed.2d 612, 617-618, 92 S.Ct. 1921].)[4]

In the instant case, the officer's affidavit does not suggest the informant's identity was known but merely concealed to prevent retaliation. Instead the clear implication is that the informer was anonymous in the sense he/she withheld his/her name from the police. Nor did testimony at the hearing indicate otherwise. Accordingly, the record is insufficient to support the officer's conclusionary characterization that this was a "citizen informer."

B. *Although This Anonymous Informant Did Not Qualify as a Citizen Informant, the Information Warranted Consideration if Corroborated.*

The information supplied by this anonymous source could play a significant part in the magistrate's determination of probable cause. The magistrate had before him more than "a bald and unilluminating assertion of suspicion." (*Spinelli* v. *United States, supra,* 393 U.S. at p. 414 [21 L.Ed.2d at p. 643].) The informer made positive and detailed assertions of fact regarding the defendant and his activities. The information regarding

---

[4] Even under *Gates, supra,* footnote 1, an anonymous tip needs corroboration before a search warrant can issue.

"The Illinois Supreme Court concluded—and we are inclined to agree—that, standing alone, the anonymous letter sent to the Bloomingdale Police Department would not provide the basis for a magistrate's determination that there was probable cause to believe contraband would be found in the Gates' car and home." (*Illinois* v. *Gates, supra,* 462 U.S. 213 at p. 227 [76 L.Ed.2d at p. 541].)

defendant's criminal activity was nearly as detailed as that supplied by "Mrs. X" in the *Cohn* case (see 30 Cal.App.3d at p. 743, fn. 6). Thus the informant here was not merely whispering that something was rotten in the State of Denmark. What he or she supplied was more akin to a full scenario naming the cast of characters, the castle at Elsinore and the modus operandi of the crimes. This raises an inference, at least, that the informer or the relative was speaking from personal knowledge. (Cf. *People v. Reagan, supra,* 128 Cal.App.3d at p. 98; *People v. Magana* (1979) 95 Cal.App.3d 453, 462 [157 Cal.Rptr. 173].) Moreover, when an anonymous informant provides such a detailed account, police have more to work with in seeking to verify the allegations.

It also is noteworthy that in the statement to the police the informer explained how the information was acquired: a relative who had recently purchased narcotics from the defendant. (Cf. *Spinelli, supra,* 393 U.S. at p. 416 [21 L.Ed.2d at p. 643].) The informer further explained the reason for wanting to remain anonymous: fear of the defendant whom the informer believed carried a gun. It is by no means implausible someone would seek to shut off the supply of drugs to a relative by tipping the police to the relative's source. Nor is it implausible the informer would adopt anonymity out of fear of the drug dealer, as alleged here, or to protect the relative from possible criminal prosecution. For these reasons the informant's statement need not be rejected out of hand. Indeed it merits considerably more weight than a bare "tip" from an anonymous source that narcotics were being sold at a certain location.

■ We conclude the detailed information from the informer had enough substance that it could properly have counted in the magistrate's determination. (See *Spinelli v. United States, supra,* 393 U.S. at p. 418 [21 L.Ed.2d at p. 644].) We also conclude that because of the anonymity of the informer he or she did not qualify as a full-fledged citizen informant. Hence the suspicions engendered by his or her information needed some verification to justify the issuance of a search warrant. (*Ibid.*; and see *People v. Bustamante* (1971) 16 Cal.App.3d 213, 217 [94 Cal.Rptr. 64].) As we explain below, the necessary corroboration is found in the results of the surveillance of defendant's home and his arrest record.

III. ACTIVITIES AT DEFENDANT'S HOME CONSISTENT WITH NARCOTICS TRAFFICKING AND DEFENDANT'S DRUG ARREST RECORD PROVIDED SUFFICIENT CORROBORATION OF THE ANONYMOUS TIP.

Information from an untested informant may be sufficient to constitute probable cause for a search if it is corroborated by facts pertaining to the defendant's alleged criminal activity. (*People v. Magana, supra,* 95

Cal.App.3d at p. 463, citing *People* v. *Fein* (1971) 4 Cal.3d 747, 752-753 [94 Cal.Rptr. 607, 484 P.2d 583].) Such corroboration does not require a first-hand observation of the defendant selling cocaine. Narcotics offenses are crimes which are usually committed in the presence only of the seller and the buyer. The requirement stated in *Fein* is that for corroboration to be adequate it must "pertain" to defendant's alleged criminal activity. (*People* v. *Fein, supra,* 4 Cal.3d at p. 753.) This requirement is met if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant. (See, e.g., *People* v. *Magana, supra,* 95 Cal.App.3d at p. 463; *People* v. *Caron* (1981) 115 Cal.App.3d 236, 241-242 [171 Cal.Rptr. 203].)

In the case at bar, the personal observations and facts gathered by the officers come very close to showing, if they do not in fact show, probable cause to search defendant's residence for narcotics. In this situation it may be more accurate to say that the informer's statement corroborated the police investigation rather than the other way around. (See, LaFave, Search and Seizure (1978) § 3.3, pp. 568-569.) Here, the informer's allegations aid in the judgment that narcotics were likely to be found in defendant's home.

For corroboration to be incriminating it is not necessary that the activities the police observe point unequivocally toward guilt. It is sufficient that those activities give rise to a reasonable inference or strong suspicion of guilt. (*People* v. *Fein, supra,* 4 Cal.3d at p. 754.) For example, the existence of two telephones in an apartment may be a "petty luxury." But *five* telephones in one apartment suggests a bookmaking operation. (*Spinelli* v. *United States, supra,* 393 U.S. at pp. 414, 418 and fn. 6 [21 L.Ed.2d at pp. 642, 644, 645].)

In the case at bar, the police observed a large number of persons visiting defendant's residence. In three days of surveillance, 22 visits took place. Most of the visitors came in the evening and stayed only a short time. Their arrivals and departures were staggered so that there was rarely more than one visitor at the home at any one time. Frequent brief visits to a residence by numerous persons is an indication of narcotic traffic. (*People* v. *Hale* (1968) 262 Cal.App.2d 780, 788 [69 Cal.Rptr. 28] [heavy traffic of persons in and out of the residence, with the persons remaining only five to ten minutes on each occasion]; and see *People* v. *Caron, supra,* 115 Cal.App.3d at p. 241; *People* v. *White* (1970) 11 Cal.App.3d 390, 397 [89 Cal.Rptr. 761]; *People* v. *Miller* (1967) 248 Cal.App.2d 731, 733 [56 Cal.Rptr. 865]; *People* v. *Fisher* (1960) 184 Cal.App.2d 308, 314 [7 Cal.Rptr. 461].) Some innocent explanation for these comings and goings may be imagined. But, "[t]he possibility of an innocent explanation does

not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

In checking defendant's arrest record, the affiant-police officer found defendant had been arrested the previous year for possession of cocaine for sale. Moreover, there was an outstanding arrest warrant for defendant on the same charge. A suspect's narcotics arrest record is relevant to the magistrate's determination of probable cause. (*People* v. *Scott* (1968) 259 Cal.App.2d 268, 276 [66 Cal.Rptr. 257].) The combination of a defendant's narcotics arrests and suspicious traffic to and from his residence was held to support probable cause for a search in *People* v. *Childress* (1979) 99 Cal.App.3d 36, 41 [160 Cal.Rptr. 47].

The officer making the affidavit in this case related his extensive experience in the field of narcotics investigations. He stated that in his opinion the frequent comings and goings from the defendant's residence and his narcotics arrest record, among other things, indicated narcotics were being dealt from that residence. ■ "It is fundamental that an officer's observations can give rise to probable cause [for a search] . . . if that officer had sufficient training and experience from which to draw the conclusions necessary to create a reasonable belief in the presence of contraband." (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 565 [128 Cal.Rptr. 641, 547 P.2d 417].) ■ Therefore, this officer's opinion was another factor the magistrate could legitimately consider in determining probable cause for the search.

## IV. CONCLUSION

■ The magistrate's order issuing a search warrant may be set aside only if the affidavit, as a matter of law, does not establish probable cause. (*People* v. *Superior Court (Corona)* (1981) 30 Cal.3d 193, 203 [178 Cal.Rptr. 334, 636 P.2d 23].) ■ "[P]robable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched." (*Wimberly* v. *Superior Court, supra,* 16 Cal.3d 557, 564.)

■ Applying this standard to the affidavit in this case, we conclude that the magistrate's finding of probable cause was supported by substantial evidence.

## Disposition

The orders quashing the search warrant and dismissing the prosecution are reversed.

Schauer, P. J., and Paez, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 14, 1983.

---

*Assigned by the Chairperson of the Judicial Council.