[No. C021215. Third Dist. June 5, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
CRAIG B. MIKESELL et al., Defendants and Respondents.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Joel Carey, Deputy Attorneys General, for Plaintiff and Appellant.

David S. Reeves and Michael B. Dashjian, under appointments by the Court of Appeal, for Defendants and Respondents.

## OPINION

**SPARKS, J.**—Defendants Craig B. and Krista Mikesell were jointly charged in an information with possession of methamphetamine for sale (Health & Saf. Code, § 11378) and possession of cocaine for sale (Health & Saf. Code, § 11351).

Thereafter the defendants moved for an order in the superior court quashing the search warrant issued for their residence and suppressing all evidence seized as a result of execution of that warrant. The trial court granted the defendants' motion to suppress evidence seized from their home under the authority of the search warrant. Later the court dismissed the case because the People were unable to proceed without the evidence which had been suppressed.

The People appeal under the auspices of Penal Code section 1238, subdivision (a)(7), contending the trial court erred by granting the defendants' motion to suppress for the following reasons: (1) the information supplied by informants in the affidavit supporting the search warrant was sufficiently corroborated such that the affidavit established probable cause, and (2) in the alternative, the seized evidence should not be suppressed under the *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] good faith exception to the exclusionary rule. We agree and reverse the judgment of dismissal.

## FACTS

On June 18, 1994, Sergeant Larry Rives of the Plumas County Sheriff's office obtained a warrant (the Rives warrant) to search the home of the defendants at 747 Bresciana Circle in Quincy for drugs and evidence of an ongoing drug sales operation. We shall summarize the information contained in the affidavit supporting Rives's application for a warrant.[1] The Rives affidavit incorporated by reference an affidavit produced in 1992 which we shall discuss next.

According to the affidavit of Sergeant Rives, on December 3, 1992, Detective Gamberg of the Plumas County Sheriff's office obtained a warrant (the Gamberg warrant) for the search of defendant's residence. In the affidavit supporting his application for a warrant, Gamberg alleged the following facts. In February of 1990, Gamberg had his first contact with Craig Mikesell. Mikesell had been threatened with a shotgun by a convicted drug dealer and the dealer's "enforcer" because Mikesell had not paid for drugs he had purchased from the dealer. Mikesell refused to testify at the drug dealer's trial for fear of retaliation.

Gamberg related that in July of 1992 a citizen informant (CI) told one Detective Hitch that there was an unusual amount of foot and car traffic to and from the Mikesells' residence. The CI stated the visits lasted only five to ten minutes and expressed his opinion that it was drug-related traffic. The CI stated he or she had been at the Mikesells' home when customers arrived and were taken into a bedroom where Craig would talk to them for a short time and then the customer would leave.

In September of 1992, Gamberg was contacted by a confidential reliable informant (CRI) with whom he had worked in the past. The CRI had "provided information on different occasions that were independently corroborated." The CRI said the Mikesells were selling cocaine from their home.

On November 26, 1992, Gamberg was contacted by another CRI who had provided independently corroborated information within the past year. This CRI said within the last 10 days he or she saw Krista Mikesell furnish cocaine to a woman at a residence in Quincy. The CRI said when Krista handed over a bindle she said "It's good coke." The CRI stated he or she was familiar with how cocaine is packaged and estimated the quantity to be one-half to one gram. The CRI did not see any money change hands. The

---

[1]We obtained the affidavit supporting the Rives warrant pursuant to California Rules of Court, rule 10(d).

Gamberg warrant was never executed because officers obtained information that led them to believe the Mikesells moved drugs and related evidence out of their home after the warrant was secured.

Returning to the Rives warrant, Officer Rives next stated that on December 26, 1993, Detective Hitch told him that a probation officer was contacted by an untested informant who said the Mikesells were "selling meth . . . big time."

On May 24, 1994, Rives was contacted by an alleged CI who had witnessed heavy car traffic to and from the Mikesells' home in the past three weeks. The visitors stayed at the home for only 15 to 20 minutes. The CI reported being told by friends that drugs were being sold from the Mikesells' home and one could buy "just about anything you want" there.

On June 17, 1994, Deputy Greg Hagwood conducted a surveillance of the Mikesells' home. Between the hours of 5 and 8:45 in the evening, Hagwood saw "numerous cars" pull into the driveway and leave after the drivers had knocked on the front door without receiving an answer. About 10 in the evening, Hagwood noticed that the Mikesells' vehicles were parked in the driveway. In a 70-minute period 8 cars pulled in and out of the driveway. Six of these cars had visited the home previously that evening when the Mikesells were not home. All but one of the visitors stayed for just a few minutes. Hagwood described the traffic as unusual for a rural residential neighborhood at that time of night.

On June 18, 1994, Officer Rives spoke to a different CI. The CI had been told by a close friend that a "close relative of the friend was buying cocaine from Krista Mikesell during the summer of 1993." The CI said that during the summer of 1993, the CI had visited the Mikesell residence on numerous occasions and that while there she heard Krista talking to other persons present in a low voice regarding drugs.[2]

At the hearing on the defendants' motion to suppress, the trial court summarized the contents of the Rives warrant, granted the motion and explained its reasoning as follows:

"[I]t's my view that that [the Rives warrant], standing alone, will not support the issuance of the search warrants.

"So, then the next question is, does reference back to the warrant that was issued in 1992, which is two years before, all stale information, does that

---

[2]The record does not establish when the Rives warrant was executed or what evidence was obtained thereby.

strengthen Rives' declaration enough to justify the issuance of a warrant. . . .

"But the information in that warrant is dated—one incident is the 7th of February, 1990; the 12th of September, 1990; the 2nd of July, 1992; and the 26th of November, 1992; and that's the only one—the 26th of November, 1992 is the only one where you can draw an inference that there was a sale—a direct sale.

"So it's my view, there is a Leon question rather than whether or not the warrants on [their] face are valid."

The court went on to state: "I think that that information [in the Gamberg warrant] is so stale that it can't be relied upon. So then the question under *Leon* for me is whether a well-trained officer would just look at the information that's contained in the Rives' affidavit exclusive of any reference to the Gamberg warrant, would consider that sufficient, and I don't think so."

## DISCUSSION

■ When reviewing the grant or denial of a motion to suppress, an appellate court must uphold the trial court's express or implied findings of fact if the facts are supported by substantial evidence. However, we use our independent judgment to determine whether those facts establish probable cause. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) We are prohibited from ordering the suppression of evidence unless federal constitutional standards require us to do so. (*In re Lance W.* (1985) 37 Cal.3d 873, 885-890 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ A reviewing court will consider the totality of the circumstances to determine whether the information contained in an affidavit supporting the application for a warrant establishes a fair probability that a place contains contraband or evidence of a crime. (*Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317].) Doubtful or marginal cases are to be resolved by the preference to be accorded to warrants. (*People* v. *Mesa* (1975) 14 Cal.3d 466, 470 [121 Cal.Rptr. 473, 535 P.2d 337].)

■ The Attorney General argues that *Bailey* v. *Superior Court* (1992) 11 Cal.App.4th 1107 [15 Cal.Rptr.2d 17] and *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929 [216 Cal.Rptr. 817] upon which the trial court seemed to rely are distinguishable. We agree and, as discussed below, conclude this case is very similar to *People* v. *Kershaw* (1983) 147 Cal.App.3d 750 [195 Cal.Rptr. 311].

In *Bailey*, one anonymous informant and one citizen informant informed officers of recent heavy foot traffic to and from the defendant's apartment. The informants expressed the opinion that the defendant was selling drugs or engaging in prostitution. An independent police investigation merely confirmed that the defendant lived at the address in question. The Second District Court of Appeal concluded that the informants' tips together with a minimal police investigation that did not corroborate any suspicious activity did not add up to probable cause to search the defendant's apartment. (11 Cal.App.4th at p. 1113.)

In *Higgason*, three anonymous callers informed police of suspected drug dealing from the defendant's home. The first caller claimed firsthand knowledge of the dealing and described a six-month operation in cocaine and marijuana sales. The second caller had observed heavy foot traffic in and out of the defendant's apartment particularly on weekends. The third caller said her boyfriend was buying marijuana from the defendant at the apartment in question. A police investigation established only that defendant lived at the suspect apartment. (170 Cal.App.3d at pp. 934-935.) The Fourth District concluded that three anonymous tips "corroborated" only by obtaining the suspect's identity, but not by the independent observation of suspicious activities, did not establish probable cause. (*Id.* pp. 939-940.)

In contrast, here the officers independently corroborated the informants' claims of heavy traffic to and from the defendants' home with firsthand observation of recent heavy traffic. Moreover, the Gamberg warrant established a good likelihood that both defendants had been involved in drug transactions in the past. In 1990, Officer Gamberg spoke with Craig Mikesell, who revealed that he had been threatened by a drug dealer who claimed Mikesell owed him money for past drug purchases. In November 1992, a CRI told Gamberg that the CRI had observed Krista Mikesell furnish cocaine to a woman at a residence in Quincy. These facts make the instant case a close fit with *People* v. *Kershaw, supra,* 147 Cal.App.3d 750 discussed next.

In *Kershaw*, police received an anonymous phone call from an informant who claimed the defendant was selling cocaine from his home. The informant learned this from a relative who claimed to be a frequent buyer of cocaine from defendant. Officers then conducted surveillance of defendant's home and found an unusual amount of traffic to and from the residence. Further investigation into defendant's background showed he had been arrested within a year for possession of cocaine for sale. (147 Cal.App.3d at pp. 752-753.) The court concluded that the traffic at defendant's home was consistent with drug sales and the defendant's drug arrest record provided

sufficient corroboration of the anonymous tip and added up to probable cause to search. (*Id.* at pp. 758-759.)

In the instant case, the information provided in the Gamberg warrant provided the functional equivalent of the drug arrest record in *Kershaw*. Officer Gamberg first made contact with Craig Mikesell in 1990 when he admitted he owed money to a drug dealer who was then threatening Mikesell over unpaid drug purchases. In November of 1992, a CRI told Gamberg that the CRI had been present when Krista Mikesell had furnished cocaine to an unidentified woman at a residence in Quincy. These two facts linked the Mikesells to the drug trade, a circumstance asserted to be currently the case by the informants in the Rives warrant. When Deputy Hagwood observed the heavy traffic to and from defendants' house, the information provided by the Rives warrant informants became corroborated to the same extent as had been the case in *Kershaw*.

Additional points remain to be made. Defendants assert that the information in the Gamberg warrant was so stale as to be entitled to no weight in the probable cause determination. We do not agree. It is true as a general rule that information remote in time may be stale and unworthy of weight in a magistrate's consideration of an affidavit supporting an application for a search warrant. (*Alexander* v. *Superior Court* (1973) 9 Cal.3d 387, 393 [107 Cal.Rptr. 483, 508 P.2d 1131].) However, if there are special circumstances that would justify a person of ordinary prudence to conclude that the alleged illegal activity had persisted from the time of the stale information to the present, then the passage of time has not deprived the old information of all value. (*Ibid.*) Here, although the Gamberg warrant was based on information as old as two to four years, the Gamberg information combined with that contained in the Rives affidavit painted a picture of the defendants' continuing participation in the drug trade. Therefore, the Gamberg information is entitled to some weight in the probable cause equation.

Defendants also assert that Deputy Hagwood's observation of heavy car traffic to and from their home did not adequately corroborate the informants' information in the Rives warrant because the traffic could be the result of wholly innocent activity. However, defendants have misstated the relevant standard for corroborating information. "For corroboration to be incriminating it is not necessary that the activities the police observe point unequivocally toward guilt. It is sufficient that those activities give rise to a reasonable inference or strong suspicion of guilt." (*People* v. *Kershaw, supra,* 147 Cal.App.3d at p. 759, citing *People* v. *Fein* (1971) 4 Cal.3d 747, 754 [94 Cal.Rptr. 607, 484 P.2d 583]; see also *Illinois* v. *Gates, supra,* 462 U.S. at p. 244, fn. 13 [76 L.Ed.2d at p. 552].)

We conclude that a review of the totality of the circumstances presented by the Rives and Gamberg warrants leads to this conclusion: a fair probability existed that evidence of an ongoing drug sales operation would be found at the Mikesells' home. Our conclusion is strengthened when we apply the rule that doubtful or marginal cases are to be resolved with a preference for upholding a search under a warrant. (*People v. Mesa, supra,* 14 Cal.3d at p. 470.)

Even if we agreed with the trial court's conclusion that the Rives warrant did not establish probable cause, we would uphold the search at issue through application of *United States* v. *Leon, supra,* 468 U.S. 897 [82 L.Ed.2d 677]. Our state Supreme Court's opinion in *People* v. *Camarella* (1991) 54 Cal.3d 592 [286 Cal.Rptr. 780, 818 P.2d 63] guides our decision. In *Camarella,* police officers received a call from an anonymous informant who said she used to purchase her cocaine from the defendant. While she no longer used cocaine, a relative of hers did and was currently buying from the defendant. The caller stated defendant's place of business and his approximate residence. (*Id.* at p. 597.)

The officer who applied for the warrant then checked his records and discovered that about nine months earlier, a CI had spoken to the officer and stated that the CI had recently purchased cocaine from Camarella. A records check showed that about three years earlier, Camarella had been arrested for possession of cocaine with "pay/owe" sheets recording probable drug sales in his possession. (*People* v. *Camarella, supra,* 54 Cal.3d at p. 598.) The only additional investigation taken prior to serving the warrant was to verify Camarella's address. There was no recent observation of heavy traffic to and from Camarella's residence.

The California Supreme Court reviewed the facts and made the following determination:

"We cannot say that an objective and reasonable officer would have 'known' this affidavit failed to establish probable cause. It is plain from the affidavit that [the officer] conducted more than a mere 'bare bones' investigation. [Citations.] He obtained substantial corroborating information that, *although stale,* was sufficient to make the probable cause determination a close question for any objectively reasonable and well-trained officer[.]" (*People* v. *Camarella, supra,* 54 Cal.3d at p. 606, italics added.)

Thus, even if we considered the information provided by the Gamberg warrant to be too stale to be of any weight in the probable cause determination, this information would reenter the picture in a *Leon* analysis. Moreover

here, unlike in *Camarella*, the informants' information was corroborated by an officer's recent, personal observation of heavy traffic in and out of the Mikesells' home.

Taken together, the Gamberg and Rives warrants established that the defendants had been involved in the drug trade within the last two to four years. Informant tips over the ensuing months established a pattern of ongoing involvement. Reports of recent heavy traffic to and from the defendants' home were independently corroborated by a timely personal observation by Officer Hagwood. Under these circumstances, we cannot say a reasonably trained officer would have known the affidavit failed to establish probable cause.

## DISPOSITION

The judgment of dismissal is reversed and the cause remanded to the trial court with directions to enter a new and different order denying defendants' motion to quash and suppress evidence and then to proceed according to law.

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied June 25, 1996, and respondents' petition for review by the Supreme Court was denied September 25, 1996. Werdegar, J., was of the opinion that the petition should be granted.