STATE of North Dakota, Plaintiff and Appellee,

v.

Howard Mark KLOSTERMAN, Defendant and Appellant.

Cr. No. 796.

Supreme Court of North Dakota.

March 25, 1982.

Ronald W. McBeth, Asst. State's Atty., Wahpeton, for plaintiff and appellee.

Christian M. Anderson, Wahpeton, for defendant and appellant.

SAND, Justice.

The defendant Howard Mark Klosterman appealed from a district court judgment resulting from a jury verdict of guilty of the crime of possession of stolen property, a class C felony.[1]

After receiving complaints from Ken Frolek and Doug Heitkamp concerning missing automotive equipment and tools, the Richland County sheriff's office conducted an investigation which culminated in the prosecution of the instant action. The

1. Section 12.1–23–02(3), North Dakota Century Code.

2. The deputy sheriff's affidavit provides as follows:

"I.

"That your Affiant is a Deputy with the Richland County Sheriff's Department and has been so employed for approximately one (1) year.

"II.

"That your Affiant has received reports of stolen automotive items from Ken Frolek and Doug Heitkamp. Both Ken Frolek and Doug Heitkamp have previously reported to your Affiant that they caught Howard Klosterman stealing items from their properties.

"III.

"That your Affiant believes that Howard Klosterman participated in the offense of Theft for the reason that on April 14, 1981, with the consent of Mrs. Mark Klosterman, your Affiant toured the Klosterman's farm yard and observed two (2) black bucket seats and a blue deck lid from a Chevrolet. Your Affiant also observed numerous auto parts lying all over the farm yard and three (3) apparently newly painted deck lids. At that time Mrs. Mark Klosterman suggested that your Affiant should have a Search Warrant. Your Affiant immediately left the farm.

"IV.

"The blue deck lid was located on the north side of an out building between some old vehicles. The black bucket seats were located inside a 1967 Chevrolet, it appeared to your Affiant that they were newly installed because there were two older, torn bucket seats sitting next to the Chevrolet. The 1967 Chevrolet was located north of the out building among the trees.

"V.

Ken Frolek reported to your Affiant that the following items were stolen from his property: Air-cooled power glide transmission and a blue deck lid were stolen from a 1965 Chevrolet on approximately December 28, 1980, two (2) black bucket seats were taken from a 1966 Chevrolet on approximately March 15, 1981, blue interior carpeting and a Delco radio were taken from a 1965 Chevrolet on approximately

affidavit in support of the search warrant[2] reflects that Frolek and Heitkamp had previously reported to deputy sheriff Robert Johnson that they had caught Klosterman stealing parts and equipment from their properties, and they expressed suspicion that he was involved in the latest thefts. The latest items reported stolen included a transmission, two black bucket seats, automotive carpeting, tools, wrenches, and a blue deck lid. Armed with this information concerning· the reported stolen property,

April 12, 1981. All items were taken from an abandoned farm one (1) mile south of the Frolek Custom Center.

"VI.

Doug Heitkamp reported to your Affiant in September, 1980, that combination wrenches and tools bearing inscription "2570" were taken from a combine belonging to Doug Heitkamp.

"VII.

"That your Affiant was told by Ken Frolek and by Howard Klosterman, himself, that he [Klosterman] has access to the North Dakota State School of Science Auto Body Shop. Donald Sebo, Director of Security at the State School of Science, reported to your Affiant that the Auto Body Shop at the State School of Science has had numerous tools and auto body equipment thefts during the last year. These tools and equipment include, but are not limited to, paint spray guns, sanders (pneumatic and electric), also numerous hand tools such as hammers and rachets. These tools and equipment belongs [sic] either the students or the State School of Science. All tools and equipment taken from the State School of Science will be inscribed with a four-digit number (the last four digits of the students Social Security number, if the tools belong to the students) or the State School of Science identifiers inscribed with indelible yellow paint if the tools belong to the State School of Science.

"VIII.

"Since your Affiant, on April 14, 1981, has personally observed a blue deck lid and two (2) black bucket seats at the Mark Klosterman farm located at Township 132 North, Range 50 West, Route 1, Mooreton, North Dakota, and since these items or similar items have been reported stolen, and since your Affiant has knowledge of numerous tools and equipment stolen from the State School of Science, and since Howard Klosterman has personally told your Affiant on April 14, 1981, that he has access to the State School of Science Auto Body Shop, your Affiant therefore believes these items are still on the Mark Klosterman farm located on the above said address."

Johnson went to the Mark Klosterman farm near Barney, North Dakota. Mark Klosterman is the father of Howard Mark Klosterman. The facts developed before us reflect that Howard Mark Klosterman assembled and dismantled automobiles in the farmyard area of his father's farm.

At the Mark Klosterman farm, deputy sheriff Johnson was met by Howard's mother, Mrs. Mark Klosterman. He informed her that her son was suspected of stealing some automotive parts and asked to look around. She agreed and consented to a search of the farmyard. During this search, the deputy sheriff observed two black bucket seats and a blue deck lid which resembled those reported stolen and which he believed were stolen. Deputy sheriff Johnson informed Mrs. Klosterman of his belief and she advised him that a search warrant was needed for any further search. The deputy sheriff then left the Mark Klosterman farm and went to the county judge to secure a search warrant which was based upon his affidavit. (See footnote 2.)

After securing a search warrant,[3] deputy sheriff Johnson returned to the Mark Klosterman farm with the head of security at the North Dakota State School of Science, Donald Sebo, and Frolek and Heitkamp. The farmyard and outbuildings were searched and several items identified as stolen by the complainants were seized. The items initially seized included two utility lawnwheels valued at $25, one black bucket seat, and several tools stolen from the North Dakota State School of Science. As it subsequently turned out, the two black bucket seats and blue deck lid observed by Johnson earlier were not stolen property, but a black bucket seat reported stolen was seized. A copy of the search warrant and a copy of the inventory of the items seized was given to Mrs. Klosterman. Thereafter Klosterman was arrested, read his rights, and brought to the county law enforcement center. He later signed a statement of his rights and made a statement concerning the thefts, pursuant to which the other black bucket seat was recovered, as well as a fender valued at $100. The testimony reflects that the two black bucket seats were valued at $100.

At the time of the search and seizure Klosterman lived in Breckenridge, Minnesota, not on the Klosterman farm. He was present during the search, and volunteered additional statements incriminating himself. Formal criminal charges were made. The items seized pursuant to the search warrant were introduced into evidence at trial over Klosterman's motion to suppress, and a 12-man jury found him guilty. Judgment was entered and Klosterman appealed to this Court.

3. The search warrant provides as follows:

"Affidavit having been made before me by Robert E. Johnson, that he has reason to believe that in the yard and out buildings on the premises described as the Mark Klosterman farm, Township 132 North, Range 50 West, Route 1, Mooreton, North Dakota, County of Richland, State of North Dakota, that there is now being concealed stolen property, namely: Two (2) black bucket seats, air-cooled powerglide transmission, blue deck lid from a 1965 Chevy Impala, blue carpeting from a 1965 Chevy, Delco radio from 1965 Chevy taken from Frolek Custom Center and combination wrenches and tools bearing inscription "2570" taken from a combine belonging to Doug Heitkamp and other items which constitutes evidence and are or may be fruits of the commission of the criminal offense, or constitutes the fruits of a crime, and I am satisfied that there is probable cause to believe that the property so described is being concealed on the premises above described, all pursuant to Rule 41(b) of the North Dakota Rules of Criminal Procedure.

"YOU ARE HEREBY COMMANDED to search within ten (10) days after receipt of this Warrant the premises named for the property specified, serving this Warrant, and making the search in the day time between 6:00 A.M. and 10:00 P.M., unless otherwise authorized below, and if the property is found therein, to seize it, leaving a copy of this Warrant and a receipt for the property seized, and prepare a written inventory of the property seized and bring the property before me.

"YOU ARE FURTHER DIRECTED that in executing this Warrant you shall be required to give prior notice of your authority and purpose.

"Given under my hand, and the seal of said Court affixed, this 16 day of April, 1981."

The defendant contends that his constitutional right to be secure from an unreasonable search and seizure was violated by the issuance and execution of the search warrant which was not supported by probable cause and by the subsequent use of the evidence obtained as a result of this search at his trial.

Initially we must consider a question which was briefly discussed during oral argument. This question concerns whether or not Klosterman can constitutionally challenge the search of the Mark Klosterman farm.

The United States Supreme Court in *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619, 623 (1980), recently dealt with standing in cases involving crimes with possession as an element, and held that "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated."[4] Thus, a determination of whether of not Klosterman has standing to challenge the search requires asking whether or not he had an expectation of privacy in the area searched.

The facts relative to Howard Klosterman's expectation of privacy in the Mark Klosterman farmyard were not fully developed in the form of a suppression hearing or affidavit, nor did Howard Klosterman testify at trial. These facts may suggest that Howard Klosterman was operating a junkyard at his father's farm where he dismantled and assembled cars. Based on this, we believe that a proprietary interest may have been established.

█ Be that as it may, we also note that failure to make a timely challenge during litigation to the question of standing will preclude a later raising of the issue on appeal. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In this instance the issue has been only indirectly raised in questions from the bench during oral argument and, in fact, the State has not asserted that Klosterman does not have standing to raise possible fourth amendment questions.

Accordingly, we need not pass on that precise issue and we will consider the merits of Klosterman's assertions.

In conjunction with Klosterman's assertion that the search warrant was not supported by probable cause, Klosterman asserts that deputy sheriff Johnson's observations at the Mark Klosterman farm do not establish probable cause, and further that if there was minimal probable cause then the warrant nevertheless failed because it was not properly limited in scope.

The fourth amendment to the United States Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Further, Article I, § 8 of the North Dakota Constitution and Rule 41(c), North Dakota Rules of Criminal Procedure, require that no warrant shall be issued until probable cause for its issuance has been established.

In *Dalia v. United States*, 441 U.S. 238, 255, 99 S.Ct. 1682, 1692, 60 L.Ed.2d 177, 191 (1979), the United States Supreme Court summarized its holdings on the requirements of search warrants as follows:

"First, warrants must be issued by neutral, disinterested magistrates. See, e.g., *Connally v. Georgia*, 429 U.S. 245, 250–251, 97 S.Ct. 546 [548–549], 50 L.Ed.2d 444 (1977) (per curiam); *Shadwick v. Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119 [2122], 32 L.Ed.2d 783 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 459–460,

---

4. This decision specifically overruled the "automatic standing" rule for crimes with possession as an element which was adopted in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960) and followed by this court in *State v. Fischer*, 270 N.W.2d 345 (N.D.1978). See also, *State v. Klodt*, 298 N.W.2d 783 (N.D.1980).

91 S.Ct. 2022 [2034–2035], 29 L.Ed.2d 564 (1971). Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for the particular offense. *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642 [1650], 18 L.Ed.2d 782 (1967). Finally, 'warrants must particularly describe the "things to be seized,"' as well as the place to be searched. *Stanford v. Texas*, supra [379 U.S.], at 485, 85 S.Ct. 506 [at 511], 13 L.Ed.2d 431."

It is the first two items which we must initially consider in this case.

In *Berger v. State of New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040, 1050 (1967), the United States Supreme Court stated:

"Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Husty v. United States*, 282 U.S. 694, 700–701, 51 S.Ct. 240, 241–242, 75 L.Ed. 629 (1931); *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949)."

As the court in *Brinegar v. United States, supra*, observed in dealing with probable cause, as the name implies, we deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. See also, *State v. Nagel*, 308 N.W.2d 539 (N.D.1981); *State v. Berger*, 285 N.W.2d 533 (N.D.1979); *State v. Schmeets*, 278 N.W.2d 401 (N.D.1979); *State v. Mertens*, 268 N.W.2d 446 (N.D.1978).

The *Brinegar* court also observed that there is a large difference in the quanta and modes of proof required to establish guilt in a criminal trial and to establish the existence of probable cause in a pretrial proceeding to suppress evidence.

■ Affidavits executed in support of a search warrant are to be tested in a commonsense and realistic fashion and not in a hypertechnical manner. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *State v. Mertens, supra.* The Supreme Court in *United States v. Ventresca, supra,* 380 U.S. at 108–109, 85 S.Ct. at 745–746, 13 L.Ed.2d at 689, went on to say:

"They [affidavits] are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar v. Texas*, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."

■ While the affidavit in support of the search warrant in this instance may not be a model of artful drafting, we believe it sets forth the minimum requirements to establish probable cause. The affidavit specifically identifies deputy sheriff Johnson's sources of information as being Ken Frolek,

Doug Heitkamp, and Donald Sebo. The affidavit further provides that Frolek and Heitkamp reported to deputy sheriff Johnson that several items of personal property were stolen from them. The affidavit also specifically lists several of these items of stolen personal property. Further, the affidavit relates that deputy sheriff Johnson went on the Mark Klosterman farm with the consent of Mrs. Mark Klosterman [5] and personally observed personal property corresponding to that which had been reported stolen. Keeping in mind that the standard of proof is probable cause and not guilt beyond a reasonable doubt, and that affidavits in support of search warrants are not to be interpreted in a hypertechnical manner, we believe these earlier set out factors set forth in the affidavit establish sufficient probable cause for the issuance of a search warrant.

On a closely related point, Klosterman also contends that critical hearsay information was used by deputy sheriff Johnson in his affidavit and that this hearsay information was obtained from informers who were not shown, in the four corners of the affidavit, to possess the required veracity or basis of knowledge. Thus, Klosterman asserts that the trial court erred in concluding that the test outlined in *State v. Schmeets, supra*, did not apply to this case.

Our decision in *State v. Schmeets, supra*, followed the "Aguilar Two-pronged Test" to determine the existence of probable cause when based on hearsay information given to the affiant by an informant. The test provides as follows:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant ... the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where

he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was 'credible' or his information 'reliable'." *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).

See also, *State v. Dove*, 182 N.W.2d 297 (N.D.1970).[6]

In *State v. Schmeets, supra* at 408, we noted that "the *Aguilar* veracity requirements are to be more strictly applied when the informant is an unnamed informant from the 'criminal milieu', than when the informant is a named good citizen informant, an innocent victim of the crime, or otherwise is a disinterested observer." citing *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711 (1971); *Schmidt v. State*, 17 Md. App. 492, 302 A.2d 714 (1973).

■ In this instance, deputy sheriff Johnson's affidavit reflects that part of the information contained therein was obtained as a direct result of his own personal observations at the Mark Klosterman farm with the consent of Mrs. Mark Klosterman. Johnson's personal observations resulted from reports of stolen property by the victims, Frolek and Heitkamp. These "informants" were named in the affidavit and cannot be characterized as unnamed or unknown informants from the "criminal milieu." We believe it is essential to efficient law enforcement practice for those officials to rely upon a named good citizen informant, an innocent victim of a crime, or an otherwise disinterested observer. In so doing, we also believe that the magistrate must take into account the status of an "informant" in judging his credibility or reliability.

■ In this instance the deputy sheriff and persons who provided information to

---

**5.** Consent to a search may be given by a third party who possesses common authority over the premises. See *State v. Swenningson*, 297 N.W.2d 405 (N.D.1980).

**6.** The "Aguilar Two-Prong Test" was further outlined as follows:

"The *Trustworthiness* of Hearsay
  I. The *Basis of Knowledge* Prong
 II. The *Veracity* Prong
   A. The *Credibility* Spur
   B. The *Reliability* Spur."
*State v. Schmeets, supra* at 406.

him were persons within the same community as that of the magistrate and the sheriff, which gives the magistrate reason to infer that they were not strangers to each other or to the magistrate.

We believe the veracity requirement for the named victims of the crime has, in this instance, been satisfied by the description contained in the affidavit. Further, we also note that the named informants' information was verified by deputy sheriff Johnson's observations at the Mark Klosterman farm.

■ We also believe that the magistrate, in inquiring into the basis-of-knowledge prong, may consider that the informant named in the affidavit is either a good citizen informant, a victim of a crime, or a disinterested observer, or all of them.

■ In this instance, deputy sheriff Johnson's affidavit provides that the named informants, Ken Frolek and Doug Heitkamp "had previously reported to your affiant [deputy sheriff Johnson] that they caught Howard Klosterman stealing items from their property." We believe that from this statement the magistrate could logically have concluded that Klosterman had been involved in previous thefts from the same victims which were reported to the sheriff. Further, because of the reported thefts in the instant case and deputy sheriff Johnson's observations, we believe the magistrate could also have logically concluded that Klosterman was involved in the instant thefts. We believe that the basis-of-knowledge requirement was met by the affidavit in the instant case.

Based on the foregoing, we conclude that the search warrant was properly issued.

Klosterman also asserts that deputy sheriff Johnson violated his constitutional rights by inviting and permitting non-law enforcement personnel to accompany him on the search of the Mark Klosterman farm. In conjunction with this assertion, Klosterman contends that the details of the crimes and

the specificity of items to be seized were so badly lacking that the warrant was used as an excuse to invite Sebo, Frolek and Heitkamp onto the Mark Klosterman farm in hopes that they could identify stolen property.

■ In this instance we do not believe that Klosterman's constitutional rights were violated because Sebo, Frolek and Heitkamp accompanied deputy sheriff Johnson to the Mark Klosterman farm to identify their property. We believe that the victim of a burglary may accompany law enforcement personnel in the execution of a valid search warrant in order to identify stolen property of theirs. *People v. Superior Court of Marin County*, 25 Cal.3d 67, 157 Cal.Rptr. 716, 598 P.2d 877 (1979). However, the non-law enforcement personnel must, in effect, be governed by the same rules as law enforcement personnel in considering their conduct during the search.[7] In this instance the record reflects that the non-law enforcement personnel conducted themselves in a manner in which law enforcement personnel would have been entitled. We specifically note that in this instance there was a valid search warrant issued upon probable cause and that some items listed in the search warrant were in fact seized.

■ There were items seized which were not listed in the search warrant; however, because there was a prior valid intrusion pursuant to the search warrant, we believe these items were properly seized after being identified as stolen pursuant to the plain view doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Having concluded that the search warrant was properly issued and that the items were properly seized, the judgment of conviction of the trial court based on the jury verdict is affirmed.

---

**7.** In this instance, the State conceded during oral argument that Heitkamp, Frolek, and Sebo were "agents" of the State.

ERICKSTAD, C. J., PEDERSON and VANDE WALLE, JJ., and GRAFF, District Judge, concur.

GRAFF, District Judge, sitting in place of PAULSON, J., disqualified.