STATE of North Dakota, Plaintiff
and Appellant,

v.

Randy THOMPSON and Jackie
Thompson, Defendants and
Appellees.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Randy and Jackie THOMPSON,
Defendants and Appellants.

Cr. Nos. 1045–46, 1051–52.

Supreme Court of North Dakota.

June 10, 1985.

Alan Duppler, States Atty., Stanton, for plaintiff and appellant.

Chapman & Chapman, Bismarck, for defendants and appellees; argued by Daniel J. Chapman, Bismarck.

ERICKSTAD, Chief Justice.

Our task in these appeals is to ascertain the validity of a search warrant issued by a county magistrate on the basis of the sworn affidavit of a law enforcement officer acting on an anonymous informant's tip. We hold that, under the circumstances of this case, the search warrant should not have been issued because the officer's affidavit did not provide a substantial basis to support the magistrate's finding of probable cause, and, further, that all evidence obtained in the subsequent execution of the warrant must be suppressed.

On February 15, 1984, Mercer County Deputy Sheriff Wesley J. Berg obtained a search warrant authorizing the search of the defendants' residence and their vehicle for "marijuana, other controlled substances, and related drug paraphernalia." The search warrant was issued on the affidavit of Deputy Sheriff Berg, signed and sworn to before Donna M. Buchmann, a county magistrate. This affidavit reads:

"I, Wesley J. Berg, being first duly sworn, depose and state that I am a deputy with the Mercer County Sheriff's Office. As such, one of my duties is to investigate crimes occurring in Mercer County. In that capacity I have become familiar with the below described facts.

"On February 15, 1984, at about 10:00 a.m., CST, the North Dakota Drug Enforcement Unit in Bismarck, North Dakota, received an anonymous phone call. The caller told them that Randy and Jackie Thompson, who live outside of Zap, North Dakota, presently have a large supply of marijuana in their house. According to the informant, Randy and Jackie Thompson lived inside the city of Zap until a short time ago when they moved to a farmstead. Randy Thompson was described as being heavy set, five feet ten inches tall, with dark hair and is approximately 30 years old. Jackie Thompson was described as a large woman with light hair and who is 27 or 28 years old. The informant said, further, that both Randy and Jackie Thompson work at a power plant near Beulah, North Dakota, and that Jackie Thompson, specifically, works in the office at the power plant. The Thompsons, according to the informant, drive a blue and white pickup with a camper on it.

"This informant advised the Drug Enforcement Unit that she had provided information against a Mr. Mike Stockert in May of 1983. The information she provided against Mr. Stockert proved to be correct in every detail, and Mr. Stockert is presently serving time in the North Dakota State Pennitentiary [sic] as a result of this information.

"Acting on the above information, I have verified that Randy and Jackie Thompson did live in the city of Zap until shortly before Christmas. At that time, they moved to the Edward Bauer farmstead located in the Northeast quarter of Section 14, Township 146, Range 89. Jackie Thompson works cleaning the office at the Great Plains Coal Gasification Associates. Randy and Jackie Thompson own a blue and white 1978 Ford pickup, license number TCW–499 which has a topper or camper on it.

"The anonymous informant advised the Drug Enforcement Unit that Randy and Jackie Thompson were selling marijuana in Bismarck on February 11, 1984. They were driving their blue and white pickup at the time.

"Based on the foregoing information, I hereby apply for a warrant to search the Randy and Jackie Thompson residence located at the former Edward Bauer farmstead located in the Northeast quarter of Section 14, Township 146, Range 89, in Mercer County. This application is for a warrant to cover the house, and any out buildings on the farmstead, as well as for the blue and white pickup owned by Randy and Jackie Thompson described above. The objects of the search are marijuana, any other controlled substances, and related drug paraphernalia which may be found."

The search warrant was executed at approximately 6:00 p.m. on February 15, 1984, by Deputy Berg and other law enforcement officers, including two special agents of the North Dakota Drug Enforcement Unit. As a result of the search, charges were filed in the District Court of Mercer County against Randy and Jackie Thompson for possession of a controlled substance with intent to deliver (288.96 grams of marijuana), a class B felony. The Thompsons were also charged in Mercer County Court with possession of drug paraphernalia, a class A misdemeanor.

On April 13, 1984, the Thompsons filed in county court, and on April 26, 1984, filed in district court, motions to suppress "any and all evidence, including personal observation of any person, made as the result of the search warrant" issued by the county magistrate. Following the submission of briefs by the parties, the county court, the Honorable O.A. Schulz, issued a memorandum opinion and order dated May 23, 1984, denying the motions. The district court, the Honorable Dennis A. Schneider, issued a memorandum opinion and order dated July 7, 1984, granting the motions.

The district court concluded that the affidavit of Deputy Berg did not comply with the standards set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and further explicated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[1] The district court recognized that the United States Supreme Court, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), abandoned the two-pronged *Aguilar-Spinelli* test in favor of a "totality of circumstances" approach for determining whether or not an informant's tip suffices to establish probable cause for the issuance of a warrant. The district court concluded, however, that *Gates* was inapplicable, reasoning that *Gates* did not "ipso facto" change North Dakota case law "which is grounded in our [State] Constitution, Article I, Section 8." In addition, the district court concluded that the affidavit failed to satisfy the "totality of circumstances" analysis of *Gates*. In so holding the court said:

"The informant's story and the surrounding facts possess no internal coherence that give weight to the whole of her story. Her story carries no more credence than that told by any person with or without motive and lacks any significant attributes of verification, nor is that verification supplied in the affidavit by any other source."

The county court concluded that the search warrant was valid under *Gates*. In a bench trial had on August 20, 1984, the county court found Randy and Jackie Thompson guilty of the crime of possession of drug paraphernalia. Their convictions were based entirely on the use in evidence against them of drug paraphernalia that had been seized during the search of their residence and vehicle.

1. In *Aguilar* and *Spinelli*, the Supreme Court set forth two requirements for affidavits containing hearsay information provided the affiant by an unidentified informant: (1) the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the contraband is where he claims it is (the "basis of knowledge" prong), *and* (2) the magistrate must be informed of some of the underlying circumstances from which the affiant concluded that the informant is credible or his information reliable (the "veracity" prong). *Aguilar*, 378 U.S. at 114, 84 S.Ct. at 1514; *Spinelli*, 393 U.S. at 412–13, 89 S.Ct. at 586–88. *See State v. Schmeets*, 278 N.W.2d 401 (N.D.1979).

■ The State appeals from the district court's order suppressing evidence.[2] Although it concedes "that much of officer Berg's affidavit is merely a restatement of the word of an anonymous informant," and that the Thompsons are "probably correct" in asserting that the affidavit does not satisfy the basis of knowledge and veracity prongs of the *Aguilar-Spinelli* test, the State asserts that under the "totality of circumstances" analysis of *Gates*, the affidavit of Deputy Berg provides a substantial basis for the magistrate's determination that probable cause existed to search the Thompsons' residence and vehicle.

Randy and Jackie Thompson appeal from judgments of conviction entered in the county court. They contend in part, that the affidavit of Deputy Berg does not establish probable cause under the requirements of either *Gates* or *Aguilar-Spinelli.*

## I

It is our view that even under the more flexible "totality of circumstances" standard of *Gates*, the affidavit does not provide a substantial basis for the magistrate's conclusion that probable cause existed to support the issuance of the search warrant.

In *Gates*, the Police Department of Bloomingdale, Illinois, a suburb of Chicago, received an anonymous letter which informed them that the defendants, husband and wife, "strictly make their living on selling drugs," and had "over $100,000.00 worth of drugs in their basement." The letter detailed the typical *modus operandi* of the couple's drug operation, to wit: the wife would drive their car to Florida, leave it "to be loaded up with drugs" and then fly back, after which the husband would fly down and drive the car back. The letter predicted that on May 3, the wife would be driving down to Florida and that the husband would be flying down in a few days, which would result in "over $100,000.00 in drugs" being brought back in the trunk of the car.

Acting on the tip, the police determined the defendants' address and confirmed that the husband had made a reservation to fly to West Palm Beach, Florida, on May 5. Through surveillance it was established that the husband made the flight, checked into a hotel room registered in the wife's name, and left the following morning, accompanied by an unidentified woman, in an automobile bearing Illinois license plates registered to him, heading north on an interstate highway used by travelers to the Chicago area. A search warrant was issued by a state circuit judge for the Gates' residence and automobile upon an affidavit which set forth the foregoing facts and a copy of the anonymous letter. 103 S.Ct. at 2325–26.

*Gates* holds that the task of a magistrate in viewing an affidavit in support of a search warrant is simply to make a practical, common-sense decision whether or not, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* 103 S.Ct. at 2332. "Sufficient informa-

2. The Thompsons have filed a motion to dismiss the State's appeal, alleging that the State has failed to file an adequate statement and explanation of the reasons for the appeal in compliance with Section 29–28–07(5), N.D.C.C., and *State v. Dilger*, 322 N.W.2d 461 (N.D.1982). The State filed with its notice of appeal the following statement pursuant to Section 29–28–07(5):

"The Honorable Dennis A. Schneider has granted Defendant's Motion below to suppress all of the physical evidence herein. This order has rendered the proof available to the State, with respect to the criminal charge filed herein, insufficient as a matter of law."

A state's explanation why the court's order suppressing evidence rendered the available proof insufficient as a matter of law may be provided in the state's brief filed for the purposes of the appeal. *Dilger*, 322 N.W.2d at 463. In its brief the State asserts that "[s]ince the State's entire case was based on this evidence, Judge Schneider's ruling left the State without a case at all." In light of the nature and circumstances of this case and the necessary reliance placed by the prosecution upon evidence obtained in execution of the search warrant, we believe the State's explanation is adequate. Accordingly, the motion to dismiss is denied.

tion must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* The duty of a reviewing court is to ensure that the "magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.*, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

The majority in *Gates* agreed that the elements under the two-pronged test concerning the informant's veracity, reliability, and basis of knowledge "are all highly relevant in determining the value of his report." *Id.* 103 S.Ct. at 2327. Courts should continue to place reliance upon the elaboration of these elements, not "as entirely separate and independent requirements to be rigidly exacted in every case," but rather as "closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* 103 S.Ct. at 2327–28.

■ Information supplied by an anonymous informant cannot alone establish probable cause for a warrant if the tip provides virtually nothing from which one might conclude that the informant is honest or that his information is reliable, or if the information "gives absolutely no indication of the basis for [the informant's] predictions" regarding a defendant's criminal activities. *Id.* 103 S.Ct. at 2326. While the Supreme Court indicated that for these reasons it was inclined to agree that the anonymous letter in *Gates*, standing alone, did not provide probable cause to believe contraband would be found in the Gates' car and home, the Court found that the independent police corroboration of the anonymous informant's detailed account of the Gates' future actions provided a substantial basis for believing that the informant had access to reliable information. This is illustrated by the following from *Gates:*

> "Even standing alone, the facts obtained through the independent [police] investigation ... at least suggested that the

Gates were involved in drug trafficking." 103 S.Ct. at 2334.

"The corroboration of the letter's predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true." *Id.* 103 S.Ct. at 2335.

"[T]he anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.... It is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story from the Gates or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability." *Id.* 103 S.Ct. at 2335–36.

Subsequently, in *Massachusetts v. Upton*, —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (per curiam), the Supreme Court reaffirmed its holding in *Gates* and emphasized the rejection of "after-the-fact, *de novo* [probable cause] scrutiny" by reviewing courts and the "judging [of] bits and pieces of information in isolation against the artificial standards provided by the two-pronged test." 104 S.Ct. at 2087–88.

In *Upton*, the affidavit of one Lt. Beland set forth the following information: Lt. Beland assisted in the execution of a search warrant for the motel room of Richard Kelleher which yielded property stolen in recent burglaries; but other items taken in those burglaries, such as jewelry, silver and gold, were not found at the motel. Approximately three hours later, Lt. Beland received a telephone call from an unidentified woman who revealed knowledge of the motel search and informed the officer of the existence of a motor home "full of stolen stuff" parked behind Upton's home at 5 Jefferson Avenue. The informant stated that she had seen the stolen

items, which she asserted included jewelry, silver and gold, and informed the police of Upton's plan to move the motor home as a result of the motel search and because he had purchased the stolen items from Kelleher. The informant initially refused to identify herself but did admit upon Lt. Beland's assertion that she was Upton's former girlfriend. Lt. Beland thereafter observed a motor home parked on the premises of 5 Jefferson Avenue.

Applying the *Gates* standard of review, the Supreme Court found that Lt. Beland's affidavit provided a sufficient basis for the magistrate's finding of probable cause.

"Examined in light of *Gates*, Lt. Beland's affidavit provides a substantial basis for the issuance of the warrant. No single piece of evidence in it is conclusive. But the pieces fit neatly together and, so viewed, support the magistrate's determination that there was 'a fair probability that contraband or evidence of crime' would be found in Upton's motor home.... The informant claimed to have seen the stolen goods and gave a description of them which tallied with the items taken in recent burglaries. She knew of the raid on the motel room—which produced evidence connected to those burglaries—and that the room had been reserved by Kelleher. She explained the connection between Kelleher's motel room and the stolen goods in Upton's motor home. And she provided a motive both for her attempt at anonymity—fear of Upton's retaliation—and for furnishing the information—her recent breakup with Upton and her desire 'to burn him.'

\*    \*    \*    \*    \*    \*

"In concluding that there was probable cause for the issuance of this warrant, the magistrate can hardly be accused of approving a mere 'hunch' or a bare recital of legal conclusions. The informant's story and the surrounding facts possessed an internal coherence that gave weight to the whole." *Upton*, 104 S.Ct. at 2088–89.

The State asserts that the facts of *Gates* "closely parallel" the facts of the instant case, in that, like *Gates*, the police independently verified information that "could have had a completely innocent explanation." Furthermore, the State argues that, unlike *Gates*, the informant in this case had shown her reliability in the past by providing "extremely detailed and useful information" concerning another defendant.

We begin our analysis of the totality of circumstances in this case by pointing out that the anonymous informant's tip did not disclose any specific facts or circumstances from which the informant concluded that the Thompsons "have a large supply of marijuana" in their home, and were "selling marijuana in Bismarck on February 11, 1984." Our view of the affidavit is that the anonymous informant merely asserted that she had given a previous tip which resulted in the arrest and conviction of another person who was now in the State Penitentiary. There is nothing in the affidavit of Deputy Berg which tends to prove that the anonymous informant is the same person who gave the tip that resulted in the other person's arrest and conviction. The other information as to the description of the Thompsons and their pickup and as to their former place of residence and their new place of residence could have been supplied by anyone who observed them coming and going in conjunction with completely innocent employment in the Beulah and Zap areas. The allegation of the sale in Bismarck of marijuana is lacking in evidentiary detail. It is purely a conclusory statement without evidentiary support. Nothing stated in the affidavit in the instant case indicates that the anonymous informant was privy to very personal information about the defendants such as in *Gates*, which when verified would lend credence to the unverified alleged criminal activity.

The State places considerable reliance upon the informant's "track record," in that she allegedly supplied information in a prior matter which "proved to be correct in every detail." In support of the proposition that a deficiency in either the "basis of

knowledge" or "veracity" prongs of *Aguilar* may be compensated for, in determining the overall reliability of the tip, by a strong showing as to the other prong or some other indicia of reliability, the *Gates* majority offered the following example: "If . . . a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. See *United States v. Sellers*, 483 F.2d 37 (CA5 1973)." 103 S.Ct. at 2329.

In our view the magistrate was not provided enough meaningful information to make an informed judgment on the question of the anonymous informant's past performance. *See Schmeets*, 278 N.W.2d at 408. For example, it would have been meaningful under the circumstances of this case to tell the magistrate what, if any, underlying facts support the conclusion implicitly made in the affidavit that *the anonymous informant was the same person who provided accurate information to law enforcement officers in the past.*

■ Contrary to the State's assertion, we believe the scope of independent police corroboration of the informant's tip in this case differs substantially from the investigatory work performed in *Gates*. The Supreme Court in *Gates*, in noting that the magistrate could rely on the anonymous letter corroborated in major part by police efforts, "just as had occurred in *Draper* [*v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ]," [3] made the following observations concerning the sufficiency of police corroboration of entirely innocent activity:

"[I]t bears noting that *all* of the corroborating detail established in *Draper, supra*, was of entirely innocent activity . . . .

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." 103 S.Ct. at 2335 n. 13.

Thus, we are mindful that completely innocent activity can provide sufficient corroboration in some circumstances. The fact remains, however, that even under *Gates* "a conscientious assessment of the basis for crediting . . . tips is required by the Fourth Amendment." *Gates*, 103 S.Ct. at 2332.

In *Draper* and *Gates* the informants provided in explicit detail information concerning activities that would be undertaken by persons *in the future*. The corroboration of these otherwise innocent facts, which would be known only to one with close access to the suspects, gave the police rea-

---

**3.** In *Draper,* an informant named Hereford reported to a federal narcotics agent that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of Draper and predicted that he would be wearing a light colored raincoat, brown slacks, and black shoes, and would be walking "real fast." The informant gave no indication of the basis for his information. However, the Court's opinion notes that the informant had been engaged as an employee of the Bureau of Narcotics for about six months, and "from time to time" gave information to the agent which the agent had always found to be accurate and reliable.

Police officers verified every facet of the information given by the informant "except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag." The *Draper* Court concluded that, "with every other bit of Hereford's information being thus personally verified, the officer had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true." 358 U.S. at 313, 79 S.Ct. at 333.

son to believe that the remainder of the informants' tips—that persons were engaged in criminal activity—were also reliable. Unlike *Gates* and *Draper*, the information corroborated by Deputy Berg consisted only of easily obtainable facts and conditions existing at the time of the tip, *i.e.*, the location of the Thompsons' residence, their recent move, their ownership of a blue and white pickup and topper, and the place of Jackie Thompson's employment. There is nothing unusual or suspicious about these facts which, when corroborated and when considered under the totality of the circumstances, reduced " 'the chances of a reckless or prevaricating tale,' " or provided " 'a substantial basis for crediting the hearsay.' " *Gates*, 103 S.Ct. at 2335, quoting *Jones*, 362 U.S. at 271, 80 S.Ct. at 736.

We find persuasive the following observations made by the Court of Appeals in *United States v. Sorrells*, 714 F.2d 1522, 1528–29 (11th Cir.1983), concerning *Gates:*

"The test in *Aguilar* has served many useful purposes aside from insuring that the constitutional rights of citizens be respected. It has given to law enforcement officers, prosecuting attorneys and the courts a straightforward test for resolving disputes over the issuance of a warrant. We do not view *Gates* as an endorsement of slovenly or careless law enforcement work. Such work will continue to produce problems for the prosecution, the defense and the courts engaged in a case by case analysis rather than a repair to certain and definite rules. The Court in *Gates* stated that *Aguilar* has provided guidance in determining the existence of probable cause and it is not anticipated that departure from these guidelines will be looked upon with favor."

Applying for purposes of this case the *Gates* "totality of circumstances" analysis to the affidavit as a whole, that is, "giving significance to each relevant piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip" [*Gates*, 103 S.Ct. at 2330; *Upton*, 104 S.Ct. at 2088], we conclude that the affidavit of Deputy Berg did not provide the magistrate with a substantial basis for determining the existence of probable cause. The anonymous informant's tip and the surrounding facts did not possess "an internal coherence that gave weight to the whole," nor did the scope of police investigatory work performed in this case adequately bolster the conclusory nature of the anonymous informant's tip.

## II

The parties have discussed the application to these cases of the "good-faith exception" to the exclusionary rule recently adopted by the United States Supreme Court in *United States v. Leon*, 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[4] The State asserts that, even assuming the search warrant was invalid, evidence obtained as a result of the search should not be suppressed, as "law enforcement did all it could reasonably be asked to do in conforming to the requirements of the Fourth Amendment."

In *Leon*, a "confidential informant of unproven reliability" informed the Burbank, California, Police Department that two individuals, later determined to be Sanchez and Stewart, were selling cocaine and methaqualone from their home. The informant further claimed to have witnessed a methaqualone sale by Stewart five months earlier and had observed at that time a shoe box containing a large amount of

---

**4.** *Leon* was decided on July 5, 1984. The question whether or not *Leon* should be applied retroactively has not been raised by either party, nor do the parties believe, as they indicated to us at oral argument, that a retroactivity problem exists. We note, without deciding the issue, that some courts have recognized that *Leon*, which restricts the Fourth Amendment benefits afford-

ed defendants rather than affording defendants greater protections and benefits, should be applied retroactively to cases not yet final on appeal. *See, e.g., United States v. Sager*, 743 F.2d 1261 (8th Cir.1984); *People v. MacAvoy*, 162 Cal.App.3d 746, 209 Cal.Rptr. 34 (1984); *People v. Helmquist*, 161 Cal.App.3d 609, 207 Cal.Rptr. 718 (1984).

cash that belonged to Stewart. On the basis of this information, the Burbank police initiated an "extensive investigation" of these two individuals and their residence, discovering, among other things, that Sanchez had previously been arrested for marijuana possession; that several individuals with known drug involvement were observed arriving at the named residence and leaving with small packages; that one of these individuals, Del Castillo, had been arrested previously for possession of fifty pounds of marijuana; that Del Castillo's employer, Albert Leon, had been arrested in 1980 on drug charges and a companion had informed the police at that time that Leon was heavily involved in the importation of drugs; and that Burbank officers had previously learned that an informant had told a Glendale police officer that Leon stored a large quantity of methaqualone at his residence in Glendale. 104 S.Ct. at 3409–10.

A search warrant, which included within its scope Leon's residence and automobile, was issued by a state judge on the basis of a lengthy affidavit prepared by Officer Rombach, "an experienced and well-trained narcotics investigator." Motions to suppress evidence seized pursuant to the warrant were granted in part by the federal district court which concluded that the affidavit was insufficient to establish probable cause. The Ninth Circuit Court of Appeals affirmed, and, in applying the then-prevailing *Aguilar-Spinelli* test, reasoned that the affidavit included no facts indicating the basis for the informants' statements concerning Leon's criminal activities and was devoid of information establishing the informants' reliability, which deficiencies were not cured by the police investigation. *Id.* 104 S.Ct. at 3411.

In its petition for certiorari, the government declined to seek review of the lower courts' determination that the search warrant was unsupported by probable cause but sought review only of whether or not good faith reliance on a facially valid search warrant requires suppression. The *Leon* majority indicated that "it undoubtedly is within our power to consider the question whether probable cause existed under the 'totality of the circumstances' test" announced in *Gates*. But, the majority also noted that the probable cause issue had not been briefed or argued, and concluded it was within the Court's authority to take the case as it came to it, "accepting the Court of Appeals' conclusion that probable cause was lacking under the prevailing legal standards." *Id.* 104 S.Ct. at 3412.

A six-justice majority of the Supreme Court held in *Leon* that the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. The Court reasoned that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 104 S.Ct. at 3421.

The *Leon* Court said that " 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " *Id.*, quoting *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Nevertheless, suppression remains an appropriate remedy under certain exceptional situations: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)," 104 S.Ct. at 3421–22; (2) if "the issuing magistrate wholly abandoned his judicial role," *id.* 104 S.Ct. at 3422, thus becoming a rubber stamp for the police; (3) if the affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Brown v. Illinois*, 422 U.S. [590] at 610–611, [95 S.Ct. 2254 at 2265–2266, 45 L.Ed.2d 416 (1975) ] (POWELL, J., concurring in part)," 104 S.Ct. at 3422; or

(4) if the warrant is "so facially deficient— *i.e.*, in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid." *Id.*

In our view, even if we were to apply for purposes of this case the *Leon* good-faith rule and its exceptions, Deputy Berg's affidavit was "so lacking in indicia of probable cause," that it was unreasonable for him to rely upon it. In this regard the Court stated in *Leon* that

"the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, ... and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* 104 S.Ct. at 3421 (citation and footnotes omitted).

Under *Leon,* the focus is not upon the magistrate's decision as is the case under *Gates,* but rather, the focus is upon the police decision to seek and then execute a certain warrant. The question to be resolved is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* 104 S.Ct. at 3421 n. 23, 3423. This question was answered in the negative by the Court under the facts in *Leon:*

"Officer Rombach's application for a warrant clearly was supported by much more than a 'bare bones' affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these

circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Id.* 104 S.Ct. at 3423.

██ Analyzed in a commonsense, non-hypertechnical way, the affidavit in the instant case does not supply anything more than a most tenuous and conclusory suggestion that the Thompsons were involved in criminal activity. In our view, the investigation in *Leon* produced much more possibly incriminating information leading to a conclusion that a search warrant was justified than the investigation in this case. It is our conclusion that under these circumstances, the officer's reliance on the magistrate's determination of probable cause was objectively unreasonable, he having supplied the information on which the search warrant was issued, and therefore, under the third exception in *Leon,* exclusion of all evidence obtained in execution of the invalid search warrant is appropriate.[5]

Accordingly, we affirm the district court's suppression order. The judgments of conviction entered in county court are reversed, the order denying the defendants' motions to suppress is vacated, and the cases are remanded with instructions that the county court enter an appropriate order granting the motions to suppress.[6]

GIERKE, LEVINE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I join in the majority opinion authored by the Chief Justice and write specially only to direct attention to the caveat, contained in footnote 5 of the majority opinion, that we have not yet adopted either *United States v. Leon* or *Illinois v. Gates.* Although the

---

5. We have analyzed these cases as argued to us by the parties and in so doing have discussed in detail *Gates* and *Leon.* Lest we be misunderstood, we emphasize that by our discussion we intimate no view on the question whether or not we should chart an independent course under Article I, Section 8, of the North Dakota Constitution with regard to the "good-faith" exception

and the standards applicable to ascertaining the validity of a search warrant.

6. In light of our disposition of this matter, we need not address additional issues raised by the Thompsons concerning alleged errors which took place during their trial in county court.

footnote serves as a red flag, it may not alert the color blind.

*United States v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was released contemporaneously with the decisions of the two trial courts in this case. As a result neither party addressed *Leon* in the proceedings below and the trial courts did not consider the case when reaching their respective conclusions.

The issue of the application of *Leon* to this case is thus not yet ripe for review by this Court and any decision in this regard would be tantamount to rendering an advisory opinion, an action we are not authorized to take. *City of Minot v. Central Ave. News, Inc.,* 325 N.W.2d 243 (N.D.1982).

The majority opinion has precedential value therefore only insofar as it addresses the probable cause standard set forth in *Aguilar v. Texas,* 378 U.S.. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which has been our State's benchmark in this area since *State v. Dove,* 182 N.W.2d 297 (N.D.1970).

*Gates* concluded the *Aguilar-Spinelli* test was unduly rigid and encouraged excessive dissection of informants' tips. *Gates,* 103 S.Ct. at 2230. In place of the *Aguilar-Spinelli* rules, *Gates* adopted a "totality of the circumstances" approach where "the task of the issuing magistrate is simply to make a practical, common sense decision whether ... there is a fair probability that contraband or evidence of a crime will be found at a particular place." *Gates,* 103 S.Ct. at 2332.

North Dakota's *Aguilar-Spinelli* guidelines do not appear to have been applied in a "hypertechnical" or "unduly rigid" manner, our magistrates seemingly making "practical, common sense decisions" in issuing warrants. See, *Gates,* 103 S.Ct. at 2350–2351, White, J., concurring. See also, *e.g., State v. Ronngren,* 361 N.W.2d 224

(N.D.1985). *State v. Klosterman,* 317 N.W.2d 796 (N.D.1982) *State v. Spoke Com., University Ctr., Etc.,* 270 N.W.2d 339 (N.D.1978); *State v. Mertens,* 268 N.W.2d 446 (N.D.1978); Therefore, resort to *Gates* may be akin to summoning the repairman to fix what "ain't broke."

Underlying the *Aguilar-Spinelli* test is the basic belief that the determination of probable cause to issue a warrant must be made by a magistrate and not by law enforcement officers who seek warrants. To perform this constitutionally prescribed function, a magistrate must be provided an affidavit containing the underlying circumstances for the officer's conclusion that the informant was credible and the information reliable. This process enables the magistrate to exercise an informed, independent judgment about the persuasiveness of the facts relied upon by the officer to show probable cause. *Spinelli,* 393 U.S. at 412–16, 89 S.Ct. at 586–89; *Aguilar,* 378 U.S. at 110–115, 84 S.Ct. at 1115–14, as found in *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984). Nor does this approach preclude examining, in a practical and realistic fashion rather than hypertechnically, affidavits executed in support of a search warrant. *State v. Klosterman, supra* at 801.

For our purposes *Gates* may represent an unwise [1] evisceration of the *Aguilar-Spinelli* probable cause standard which has well served North Dakota in effectuating the safeguards contained in Article I, § 8, of the North Dakota Constitution, which Article states:

"The rights of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall be issued but upon probable cause, supported by oath or affirmation, particularly describing the place to

---

1. Other jurisdictions and legal scholars have engaged in extensive criticism of *Gates.* See *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985); *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984); *People v. Kershaw,* 147

Cal.App.3d 750, 195 Cal.Rptr. 311 (1983); Kamisar, *Gates,* "Probable Cause", "Good Faith", And Beyond, 69 Iowa L.R. 551 (1984); 1 W. LaFave, Search and Seizure, § 3.3 (Supp.1984).

be searched and the persons or things to be seized."

We may provide the citizens of our State, as a matter of State constitutional law, greater protection in interpreting Article I, § 8 than the safeguards guaranteed in the Federal Constitution. *City of Bismarck v. Altevogt,* 353 N.W.2d 760 (N.D.1984); *State v. Stockert,* 245 N.W.2d 266 (N.D. 1976); *State v. Matthews,* 216 N.W.2d 90 (N.D.1974).[2] Other jurisdictions have rejected the *Gates* "totality of the circumstances" approach and retained the *Aguilar-Spinelli* rules as appropriate under their respective state constitutions. *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985); *State v. Jackson,* 102 Wash.2d 432, 688 P.2d 136 (1984); *People v. Kershaw,* 147 Cal.App.3d 750, 195 Cal. Rptr. 311 (1983) (prior to the amendment of the State Constitution by Proposition 8). The reasoning of these states will warrant our careful consideration in the future when we decide whether or not to follow the United States Supreme Court's lead in abandoning the well-established protections against unreasonable searches and seizures offered by *Aguilar-Spinelli.*

GIERKE, J., concurs.

VANDE WALLE, Justice, concurring specially.

Neither of the trial courts involved in these appeals considered the application of *United States v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), in reaching their separate conclusions because the decision in *Leon* was released either after the trial court's decision [county court] or simultaneously with the trial court's decision [district court]. The application of *Leon* would be of prime significance because, as the majority opinion observes, and with which observation I agree, the search warrant does not meet the standard of the "totality of the circumstances" approach adopted in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Therefore, we are discussing an

issue which has not been presented to nor considered by the trial court. Although that is contrary to normal procedure in this court, it appears to me that the issue is essentially one of law. A remand to the trial court for consideration of the application of the "good-faith" exception announced in *Leon,* although it would provide us with the legal analysis of the learned trial judges, would again place the issue before us on appeal with little additional facts or evidence to assist us.

With respect to the application of *Leon* to these cases, I am not so convinced, as is the majority, that the "officer's reliance on the magistrate's determination of probable cause was objectively unreasonable, he having supplied the information on which the search warrant was issued, ..." Although, as the majority opinion points out, even if analyzed in a "commonsense, non-hypertechnical way, the affidavit in the instant case does not supply anything more than a most tenuous and conclusory suggestion that the Thompsons were involved in criminal activity," *Leon* nevertheless reversed a decision by the Ninth Circuit Court of Appeals that concluded the affidavit in that case contained no facts indicating the basis for the informants' statements concerning Leon's criminal activities and was devoid of information establishing the informants' reliability and that these defects were not cured by the police investigation. Despite those facts the Supreme Court determined that the reliance by the police officers on the warrant was "objectively reasonable."

The majority opinion may thus appear to apply the "good-faith" exception in a more narrow manner than the Supreme Court did in *Leon.* However, I agree with the majority opinion that in this instance, contrary to *Leon,* the affidavit contains no indication as to what, if anything, the officer did to verify that the informant had, in fact, given the officers information which had led to a previous arrest and conviction of Stockert and that Stockert was presently

---

**2.** This is true even when the North Dakota constitutional provisions contain phraseology similar to the United States Constitution. See, *e.g., State v. Newman,* 696 P.2d 856 (Idaho 1985).

serving time in the State Penitentiary for that conviction. Had the affidavit revealed clearly that such information was verified by Deputy Sheriff Berg, in order to determine that there was an informant in the Stockert matter, that only the person who was the informant in that matter would have had the information, and thus attempted to establish the reliability of the informant, the officer's reliance on the warrant would have been "objectively reasonable." Instead, as the majority notes, the information verified was information that would have been commonly known to most people living in an area with so few people.

Perhaps information concerning the reliability of the informant was known by the Deputy Sheriff. If so, it should have been revealed in the affidavit. The United States Supreme Court has not extended the "good-faith" exception to encompass the subjective attitude of the police officer. Although I suspect that the Deputy Sheriff and others relying on the search warrant in this instance were acting in good faith, as that term might ordinarily be used, we must nevertheless view it from an objective standpoint. In so doing, it may appear that we are giving little more than token recognition to the "good-faith" exception to the exclusionary rule and that our application of that exclusion will be little different from the "totality of the circumstances" standard of review of *Gates, supra.*